Bryan WILLOYA, Appellant,

v.

STATE of Alaska, through its DEPARTMENT OF CORRECTIONS, David L. Popken, Mike Green, Betsie Robson, Bill Parker, Larry Kinchloe, Margaret Pugh and Supervising Physician, Robert S. Fox, Appellees.

No. S–10280.

Supreme Court of Alaska.

Aug. 30, 2002.

---

Bryan Willoya, pro se, Palmer.

William F. Morse, Assistant Attorney General, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee Department of Corrections, et al.

Donna M. Meyers, Delaney, Wiles, Hayes, Gerety, Ellis & Young, Inc., Anchorage, for Appellee Robert S. Fox, M.D.

Roger F. Holmes, Biss & Holmes, Anchorage, for Appellee David L. Popken.

Before: FABE, Chief Justice,
CARPENETI, Justice, and
MANNHEIMER, HENSLEY, and FINN,
Justices pro tem.*

### OPINION

CARPENETI, Justice.

## I. INTRODUCTION

Bryan Willoya was incarcerated at Spring Creek Correctional Center when he was diagnosed with ulcerative colitis that required surgery. Willoya brought a negligence claim against the State of Alaska and the personnel that treated him. After the superior court allowed Willoya's attorney to withdraw, Willoya filed multiple motions requesting the appointment of counsel, the appointment of an expert, and the appointment of a special master, all of which were denied by the superior court. The superior court then granted the state's motion for summary judgment, which was supplemented with expert affidavits, because Willoya failed to offer expert testimony that the state was negligent in its treatment of his condition. Because the superior court properly dismissed Willoya's claim in the absence of medical testimony to contradict the state's experts and because Willoya was not entitled to court-appointed counsel, experts, or a special master, we affirm the rulings of the superior court.

---

* Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

## II. FACTS AND PROCEEDINGS

### A. Facts

Bryan Willoya was an inmate at Spring Creek Correctional Center (Spring Creek) during the time period that is relevant to this appeal. During his incarceration, Willoya complained of various health problems. On November 10, 1997 Willoya complained of blood in his stools. Willoya was seen by physician's assistant David L. Popken who diagnosed Willoya with hemorrhoids and treated him with stool softener and fiber.

Willoya again complained of rectal bleeding on November 16 and was seen by a nurse. The next morning Willoya was seen by Popken who recommended a barium enema, for diagnostic purposes, but still diagnosed Willoya with hemorrhoids. Popken also recommended that Willoya be seen by Dr. Robert S. Fox. Dr. Fox examined Willoya on November 18 and agreed with Popken's recommendation for a barium enema. Dr. Fox also found that Willoya's bowels were inflamed.

On November 24 Willoya was admitted to the prison infirmary for preparation for the barium enema. Willoya had a barium enema on November 25 at Providence Seward Hospital. The results of the barium enema required follow up, but not on an emergency basis. On December 1, 1997 Popken requested that a colonoscopy be performed in the next couple of days to rule out any abnormalities. Popken also decided to keep Willoya at Spring Creek until closer to the date of the colonoscopy before transferring him to Anchorage. Popken started Willoya on antibiotics and anti-inflammatories on December 2.

Willoya was in the prison infirmary from December 1 through December 7 where he was monitored closely. On December 7 Willoya's condition worsened when he started experiencing significant pain and abdominal cramping and his temperature rose to 101°. Dr. Fox examined Willoya that same day and diagnosed him with severe refractory colitis, a serious, life-long disease that causes an inflammation of the intestines. Dr. Fox ordered Willoya to be transferred to Providence Hospital in Anchorage on an emergency basis that day to Dr. Steve Kilkenny for a surgical consult and in-patient treatment. Upon his arrival at Providence, Willoya was seen by Dr. Richard Buchanan, an internal medicine specialist. A computer tomography radiographic exam (CT scan) was performed on Willoya on December 8. Dr. Kilkenny then ordered surgical intervention because the CT scan showed that Willoya suffered from severe ulcerative colitis involving his entire colon and appendix. A total colectomy [1] with proctectomy [2] and ileostomy [3] was performed.

### B. Proceedings

On August 12, 1999 Willoya filed a suit in the superior court against the Department of Corrections, Dr. Fox, and Popken, among others.[4] In his complaint, Willoya made claims of negligence against the state and its employees and medical negligence against Dr. Fox, and possibly negligent infliction of emotional distress against all defendants. The case was assigned to Superior Court Judge Beverly W. Cutler. At a pre-trial conference on January 3, 2000, trial was scheduled for August 6, 2001. On the same day, Judge Cutler sent a letter to the parties asking if it was their intention to waive the appointment of an expert advisory panel. The parties waived appointment of the panel.

On August 2, 2000 Willoya's counsel, Ted Stepovich, moved to withdraw from the case because attorney/client communication had broken down. Willoya did not consent to the withdrawal of Stepovich. The superior court scheduled a hearing on the motion to withdraw on September 15, 2000. On October 6

---

1. A colectomy is the "[e]xcision of a segment or all of the colon." STEDMAN'S MEDICAL DICTIONARY 325 (25th ed.1990).

2. A proctectomy is the "surgical resection of the rectum." *Id.* at 1263.

3. An ileostomy is the establishment of a fistula (an abnormal passage from an abscess, cavity, or hollow organ to the skin) through which the third portion of the small intestine discharges directly to the outside of the body. *Id.* at 763.

4. All the appellees will be collectively referred to as the state.

the superior court granted Stepovich's motion to withdraw. Judge Cutler ordered Stepovich to send all materials associated with his case to Willoya within thirty days and recognized Willoya as a *pro se* litigant.

On December 27, 2000 all defendants joined in a motion for summary judgment. The motion was supported by expert affidavits from a physician's assistant and a board certified family practitioner stating that Popken and Dr. Fox met the applicable standard of care. Willoya filed an opposition to the state's motion for summary judgment but failed to include any affidavits from medical experts.

In January 2001 Willoya filed several motions. He moved to obtain expert testimony and reports at public expense. He moved to enforce the superior court's order requiring Stepovich to send all of the materials relating to his case to him, and he asked the superior court to hold Stepovich in contempt for his failure to provide the materials within the time previously ordered. Willoya moved for the appointment of a special master and, in the alternative, the appointment of counsel. Finally, Willoya filed a motion to stay the state's motion for summary judgment and an opposition to the expert reports filed by Popken based on the experts' credentials. Popken moved to strike Willoya's opposition to the expert reports on February 15.

On April 16 the superior court ruled on all pending motions. The superior court denied without prejudice Willoya's motion to enforce the order against Stepovich and hold Stepovich in contempt. The court struck Willoya's opposition to the expert reports submitted by Popken and denied Willoya's motion for dismissal of the state's summary judgment "for the reasons advanced in the [state's] briefing." It also denied Willoya's motion to appoint an expert pursuant to Alaska Rule of Evidence 706 because Willoya made no showing that he was able to pay for his share of the appointed expert's fee. It denied both Willoya's motion to obtain expert testimony and reports at public expense and his motion to have a master appointed or, in the alternative, to have counsel appointed. Willoya's motion for a stay on the state's motion for summary judgment was denied as Willoya had already had what was effectively an extension of over two months to respond. Finally, the superior court granted the state's motion for summary judgment. Final judgment of dismissal with prejudice was entered on June 7.

Willoya appeals.

### III. STANDARD OF REVIEW

 We review an appeal from summary judgment *de novo*.[5] We affirm "[a] superior court's grant of summary judgment ... if the evidence in the record fails to disclose a genuine issue of material fact and the moving party is entitled to judgment as a matter of law."[6] "All reasonable factual inferences must be drawn in favor of the party opposing summary judgment."[7]

 We review procedural decisions of the superior court for an abuse of discretion.[8] We will reverse a ruling for abuse of discretion only when we are left with a definite and firm conviction, after reviewing the entire record, that the trial court erred.[9] We review a ruling by the superior court allowing an attorney to withdraw under the abuse of discretion standard.[10] Discovery rulings are also reviewed for abuse of discretion.[11] The same standard is used to review the superior court's decision concerning appointment of a special master.[12]

**5.** *Ganz v. Alaska Airlines, Inc.,* 963 P.2d 1015, 1017 (Alaska 1998).

**6.** *Johnson v. Olympic Liquidating Trust,* 953 P.2d 494, 496 (Alaska 1998).

**7.** *Id.*

**8.** *Dougan v. Aurora Elec., Inc.,* 50 P.3d 789 (Alaska 2002) (citing *Morgan v. State, Dep't of Revenue,* 813 P.2d 295, 297 n. 4 (Alaska 1991)).

**9.** *Id.*

**10.** *Devincenzi v. Wright,* 882 P.2d 1263, 1265 (Alaska 1994).

**11.** *Christensen v. NCH Corp.,* 956 P.2d 468, 473 (Alaska 1998).

**12.** *Peter v. Progressive Corp.,* 986 P.2d 865, 867 (Alaska 1999).

We review the superior court's factual findings on the issue of contempt for clear error.[13] A finding of fact is clearly erroneous when we are left with a definite and firm conviction based on the totality of the record before us that the trial court has made a mistake.[14]

"Constitutional questions are questions of law to which we apply our independent judgment."[15]

We apply our "independent judgment to questions of statutory interpretation, such as whether the trial court properly construed and fulfilled its statutory duty to appoint an expert advisory panel."[16] We will "adopt the rule of law that is most persuasive in light of precedent, reason, and policy."[17]

## IV. DISCUSSION

### A. The Superior Court Did Not Err in Allowing Stepovich To Withdraw and in Refusing To Sanction Stepovich for Failing To Provide the Case Materials.

#### 1. The superior court did not err in allowing Stepovich to withdraw.

Willoya argues that the superior court erred in allowing Stepovich to withdraw from the case. Willoya offers no factual or legal support for his argument that the superior court abused its discretion in letting Stepovich withdraw. The court allowed Stepovich to withdraw only after holding a hearing on his motion to withdraw, in which Willoya participated, and the withdrawal took place on October 10, 2000, ten months prior to the scheduled date for trial. We therefore hold that the superior court did not abuse its discretion in allowing Stepovich to withdraw.

#### 2. The superior court did not err in refusing to sanction Stepovich.

Willoya argues that Stepovich made unauthorized disclosures of information concerning the settlement of Willoya's claims. Willoya offers no proof of this allegation other than his own assertion and he gives no specific information as to when this conversation took place or what the particulars of the conversation were. There is no evidence that Willoya raised this issue below. Accordingly, Willoya has waived this claim.[18]

Willoya also argues that the superior court erred in denying his motion for enforcement of the order requiring Stepovich to send Willoya all materials associated with Willoya's case within thirty days. The superior court's decision denying Willoya's motion to hold Stepovich in contempt was not clearly erroneous. Stepovich filed a notice of compliance with the superior court on February 15, stating that he had sent the file to Willoya before Willoya even filed his motion for enforcement. Willoya did not refute that statement. Moreover, Willoya has alleged no harm as a result of not receiving the materials from Stepovich within the thirty days provided by the order. We will not disturb a judicial determination without evidence of both error and prejudice.[19] The superior court did not err in denying Willoya's motion.

### B. The Superior Court Did Not Err in Denying Willoya's Requests for Appointment of a Discovery Master, Counsel, a Medical Expert, and an Expert Advisory Panel.

#### 1. The superior court did not err in denying the appointment of a master.

Willoya contends that the superior court erred when it denied his motion to

**13.** *Matanuska Elec. Ass'n, Inc. v. Rewire the Bd.,* 36 P.3d 685, 690 (Alaska 2001).

**14.** *Dingeman v. Dingeman,* 865 P.2d 94, 96 (Alaska 1993).

**15.** *Sonneman v. Knight,* 790 P.2d 702, 704 (Alaska 1990).

**16.** *Taylor v. Johnston,* 985 P.2d 460, 463 (Alaska 1999) (citations omitted).

**17.** *Guin v. Ha,* 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

**18.** *Brandon v. Corr. Corp. of America,* 28 P.3d 269, 280 (Alaska 2001) (holding argument waived when not raised in court below or given cursory treatment in party's brief).

**19.** *Hayes v. Bering Sea Reindeer Products,* 983 P.2d 1280, 1283 (Alaska 1999).

appoint a master under Alaska Civil Rule 53(a).[20] The state interprets Willoya's argument as asking for the appointment of a discovery master. Willoya's motion to the superior court indicates that Willoya intended that the master would help him deal with discovery requests and organize material that he received from the other side.[21]

In *Peter v. Progressive Corp.*,[22] we stated:

appointment of a discovery master should generally be reserved for cases (1) where the issues are unusually complex or specialized; (2) where discovery is particularly document intensive; (3) where resolving discovery disputes will be especially time consuming; (4) where the parties are particularly contentious or obstructionist; or (5) where a master will facilitate a more speedy and economical determination of the case.[23]

Willoya fails to assert that any of the five factors mentioned above are present in this case. While the case does involve claims of medical negligence, which is a specialized area, there is no indication that the trial court was unduly burdened by these specialized issues. There is also no indication that any of the other factors apply to this case. Therefore, we uphold the superior court's denial of Willoya's request to appoint a master.

### 2. The superior court did not err in denying the appointment of counsel.

Willoya argues that the superior court erred when it denied his request to appoint counsel. The state responds that Willoya had no right to court-appointed counsel. The state contends that the mere fact that Willoya is indigent does not implicate the same right to counsel in a tort/personal injury case as it does in a criminal case. In fact, in his original motion, Willoya admits that he is "aware that he has no real right for the appointment of bonafide counsel by the court." We have recently reiterated that there is no right to appointed counsel in tort cases.[24] The superior court did not err in denying Willoya's request to have counsel appointed for him.

### 3. The superior court did not err in denying the appointment of an expert under Evidence Rule 706.

Willoya contends that the superior court erred when it denied his motion to have an expert appointed pursuant to Alaska Evidence Rule 706(a).[25] The state responds that

20. Alaska R. Civ. P. 53(a) states:

The presiding judge of the superior court for each judicial district with the approval of the chief justice of the Supreme Court may appoint one or more standing masters for such district, and the court in which any action is pending may appoint a special master therein. As used in these rules the word "master" includes a referee, an auditor and an examiner, and a magistrate or a deputy magistrate. The compensation, if any, to be allowed to a master shall be fixed by the court, and shall be charged upon such of the parties or paid out of any fund or subject matter of the action which is in the custody and control of the court, as the court may direct. The master shall not retain the master's report as security for compensation; but when the party ordered to pay the compensation allowed by the court does not pay it after notice and within the time prescribed by the court, the master is entitled to a writ of execution against the delinquent party.

21. While we analyze this request under standards relevant to the appointment of masters under Civil Rule 53, we note that Willoya's an-

nounced purposes for seeking appointment of a master show that Willoya in effect sought the appointment of a legal assistant to him.

22. 986 P.2d 865 (Alaska 1999).

23. *Id.* at 870.

24. *Midgett v. Cook Inlet Pre–Trial Facility*, 53 P.3d 1105 (Alaska 2002).

25. Alaska R. Evid. 706(a) states:

The court may on its own motion or on the motion of any party enter an order to show cause why expert witnesses should not be appointed, and may request the parties to submit nominations. The court may appoint expert witnesses. An expert witness shall not be appointed by the court unless the witness consents to act. A witness so appointed shall be informed of the witness' duties by the court in writing, a copy of which shall be filed with the clerk, or at a conference in which the parties shall have opportunity to participate. A witness so appointed shall advise the parties of the witness' findings, if any; the witness' depo-

the rule does not warrant the appointment of an expert because this case is not complex. The state also points to Willoya's argument in his original motion that an expert is needed in order "to coherently present the plaintiff's claims and any rebuttal testimonies of defendant[s'] proposed experts." The state argues that this is an inappropriate reason for the superior court to appoint an expert.

The language of Rule 706 supports the conclusion that the rule was meant as a discretionary, procedural option for a judge when the issues involved in a case are unusually complex. The language of the rule— "[t]he court may appoint expert witnesses"— makes clear that appointment by the court is discretionary.

Rule 706 was not intended as a means for an indigent party to obtain expert testimony at public expense. The superior court correctly observed that "the court has no funds with which to support private litigation such as this litigation."[26]

### 4. The superior court did not err in denying the appointment of a medical expert advisory panel.

■ Willoya contends that the superior court erred in failing to appoint a medical expert advisory panel. Willoya states that

sition may be taken by any party; and the witness may be called to testify by the court or any party. If the court determines that the interests of justice so require, the party calling an expert appointed under this rule may cross-examine the witness.

**26.** We note that, by ruling on Willoya's motion for the appointment of an expert at public expense, his motion for a stay upon the state's motion for summary judgment, and the state's motion for summary judgment all on the same day, the superior court may not have fully considered Willoya's disadvantage as a *pro se* litigant. We think the better practice, as exemplified by the trial court's procedure in *Kaiser v. Sakata*, 40 P.3d 800 (Alaska 2002), is to grant a *pro se* medical malpractice litigant an extension of time to respond to a summary judgment motion, to explain to the litigant what he needs to oppose the motion, and to make clear that the litigant could not rely on his own testimony in opposing summary judgment before ruling on the motion. *Id.* at 802–03. We find that the court's deciding of all of the pending motions on the same day in this case, however, was not

he needed the panel in order to present his case as required by AS 09.55.536(a).[27]

Alaska Statute 09.55.536 provides for a pretrial review of medical malpractice claims by an expert advisory panel and allows for the admission into evidence of the panel's report at trial.[28] Here, the superior court wrote to both parties asking if the parties wanted an expert advisory panel appointed. There is no evidence in the record that Willoya requested an expert advisory panel after receiving this letter. In the order granting summary judgment to the state the superior court noted that Willoya "through his counsel rejected the court's offer to appoint an expert advisory panel." Because the parties waived their right to an expert advisory panel, we hold that the superior court did not err in failing to appoint one.

### C. The Superior Court Did Not Err in Granting Summary Judgment.

#### 1. Willoya received proper notice of the requirements of submitting affidavits with his opposition to the state's motion for summary judgment.

■ Willoya states that he did not receive "understandable notice of the requirements of the summary judgment rules." Willoya argues that he did not receive notice

prejudicial to Willoya because Willoya had made it clear to the court that he was unable to provide anything further by way of opposition to the motion for summary judgment.

**27.** AS 09.55.536(a) provides:

In an action for damages due to personal injury or death based upon the provision of professional services by a health care provider, including a person providing services on behalf of a governmental entity, when the parties have not agreed to arbitration of the claim under AS 09.55.535, the court shall appoint within 20 days after filing of answer to a summons and complaint a three-person expert advisory panel unless the court decides that an expert advisory opinion is not necessary for a decision in the case. When the action is filed, the court shall, by order, determine the professions or specialties to be represented on the expert advisory panel, giving the parties the opportunity to object or make suggestions.

**28.** *Keyes v. Humana Hosp. Alaska, Inc.*, 750 P.2d 343, 345 (Alaska 1988).

of the necessity of submitting affidavits if the facts were in dispute. In *Breck v. Ulmer*,[29] we required trial judges to inform a *pro se* litigant "of the proper procedure for the action he or she is obviously attempting to accomplish."[30] Specifically, the *pro se* litigant "should [be] advised of the necessity of submitting affidavits to preclude summary judgment, and of the possibility of amending her complaint."[31]

Here, we can find no indication that the superior court formally informed Willoya of the necessity of submitting expert affidavits to avoid the grant of summary judgment in favor of the state. However, there is evidence that Willoya knew or became aware of this requirement while there was still time to submit affidavits.

First, in its motion for summary judgment, the state noted that Willoya must present expert testimony in order to support his claims for medical negligence. Second, Willoya acknowledged the need for medical testimony in his own filings. Although these acknowledgments were made after he submitted his motion for dismissal of the state's motion for summary judgment, the acknowledgments were made well before the superior court ruled on the state's motion for summary judgment. Also, the superior court noted in its denial of Willoya's January 29 motion for a stay on the state's motion for summary judgment that "today's date is 4–16–01 and plaintiff effectively has had a stay or extension of far more than 20 days to accomplish the goal sought." During this period of approximately two and one-half months from the first indication that Willoya understood the requirements for summary judgment until the state's motion was granted, Willoya never sought leave to amend his opposition or in any way comply with the

requirements. Therefore, we find that there was no need for the superior court to give Willoya formal notice of the requirements of opposing a motion for summary judgment because there is clear evidence in the record that he knew the requirements.

### 2. The state did not violate Evidence Rule 702(b) by submitting more than three experts.

Willoya asserts that the superior court violated Alaska Rule of Evidence 702(b) by allowing the state to submit more than three experts' names on its witness list.[32] Willoya misreads the rule. It prohibits the testimony of more than three experts "as to the same issue." He makes no showing that the state submitted more than three experts as to any issue. Moreover, because this case never went to trial, the experts listed never actually testified. There was no error with regard to Evidence Rule 702(b).[33]

### 3. The superior court did not err in finding that Willoya did not establish a triable case of medical negligence to preclude summary judgment.

Willoya argues that he raised genuine issues of material fact and that the superior court erred in granting the state's motion for summary judgment. With its motion for summary judgment, the state submitted the affidavits of two experts. First, the opinion of physician's assistant Edward Hall, a physician's assistant licensed in Alaska with approximately nine years of experience, was submitted. Hall stated that physician's assistant Popken met the applicable standard of care with regards to the treatment of Willo-

---

29. 745 P.2d 66 (Alaska 1987).

30. *Id.* at 75.

31. *Id.*

32. Alaska R. Evid. 702(b) states:

> No more than three independent expert witnesses may testify for each side as to the same issue in any given case. For purposes of this rule, an independent expert is a witness who is retained or specially employed to provide ex-

> pert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony. The court, upon the showing of good cause, may increase or decrease the number of independent experts to be called.

33. Willoya did not claim that the state's action in naming more than three expert witnesses resulted in an "undue burden or expense" under Alaska Rule of Civil Procedure 26(c). Accordingly, we do not address the interplay between that rule and Evidence Rule 702(b).

ya's ulcerative colitis. Second, the state submitted the affidavit of Dr. David A. Driggers, a board-certified family-practitioner licensed in four states, including Alaska. Dr. Driggers stated that both Popken and Dr. Fox treated Willoya in a manner appropriate to the complaints made by Willoya. Also, Dr. Driggers stated that the care given by both Popken and Dr. Fox met the applicable standards of care. Willoya failed to offer expert testimony to support his medical negligence claim against the state.

We have held that when a party's "motion was sufficient to establish the absence of a genuine issue as to negligence" and the other party "presented no expert affidavits and did not show, based on the evidence that was presented, that a reasonably arguable case of medical negligence existed" it is appropriate for a trial court to grant a motion for summary judgment.[34] Here, the state submitted expert affidavits that showed that the state took proper care of Willoya. Once the state met this burden, the burden shifted to Willoya to demonstrate how he would prove medical negligence. Since Willoya offered no expert opinion contrary to the expert opinions offered by the state, there was no arguable issue of medical negligence.[35] The superior court did not err in granting summary judgment in favor of the state.

**34.** *Kendall v. State, Div. of Corr.*, 692 P.2d 953, 955 (Alaska 1984).

**35.** Willoya complains that his own lay opinion evidence was admissible under Alaska Rule of Evidence 701, and faults the superior court for excluding it. Regardless whether, had the case gone to trial, Willoya may have been able to provide his own opinion testimony under Rule 701, it was insufficient to oppose expert testimony on a medical malpractice claim for summary judgment purposes. *Id.*

**36.** *Brandon v. Corr. Corp. of America*, 28 P.3d 269, 280 (Alaska 2001) (stating that "[a] party may not raise an issue for the first time on appeal.") (citing *Preblich v. Zorea*, 996 P.2d 730, 736 n. 17 (Alaska 2000)).

**37.** U.S. CONST. amend. XIV, § 1 (Willoya mistakenly cites to "Art. 5"); ALASKA CONST. art. I, § 7.

**38.** *Langdon v. Champion*, 745 P.2d 1371, 1373 (Alaska 1987); *see also Trans–World Investments v. Drobny*, 554 P.2d 1148, 1151 (Alaska 1976) (stating "we hold that the filing of a personal

**4. Willoya does not have a claim of informed consent.**

Willoya claims that he did not give informed consent when he received a barium enema because he was not notified of the material risks of the procedure. This claim was never raised below. Willoya's complaint only alleged three causes of action: the state was negligent, Dr. Fox and Popken gave negligent medical care, and possibly a negligent infliction of emotional distress claim. There is no indication that the issue of informed consent was raised below or that the superior court made any findings on the issue. Willoya has waived this claim.[36]

**D. The State Did Not Violate Willoya's Constitutional Rights.**

**1. The state did not violate Willoya's due process rights by releasing his medical records.**

Willoya claims that he was denied his right to due process in violation of both the state and federal constitutions when his medical records were released without a hearing.[37] As the state points out, once Willoya filed a civil suit putting his medical condition at issue, he waived any privilege or privacy interest he had in his medical records.[38] Willoya makes no arguments that

injury action waives the physician-patient privilege as to all information concerning the health and medical history relevant to the matters which the plaintiff has put in issue."). Alaska R. Evid. 504 states in relevant part:

(b) General Rule of Privilege. A patient has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of diagnosis or treatment of the patient's physical, mental or emotional conditions, including alcohol or drug addiction, between or among the patient, the patient's physician or psychotherapist, or persons who are participating in the diagnosis or treatment under the direction of the physician or psychotherapist, including members of the patient's family.

. . . .

(d) Exceptions. There is no privilege under this rule:

(1) *Condition on Element of Claim or Defense.* As to communications relevant to the physical, mental or emotional condition of the patient in any proceeding in which the condition of the patient is an element of the claim or

the records he is referring to are not the same records that are implicated by this case. Therefore, because Willoya has put his medical condition at issue, he has waived any claim that his rights were violated with the release of these records.[39]

### 2. Willoya waived his Eighth Amendment claim by failing to raise it in the superior court.

Willoya claims that he was denied pain medication when he requested it and that this amounted to cruel and unusual punishment in violation of the Eighth Amendment.[40] Specifically, Willoya claims that he was denied pain medication on two occasions: December 5 and 7, 1997. There is no indication that Willoya ever raised this claim before the superior court and, therefore, no findings of fact were ever made regarding these two incidents.[41] Because this argument was not raised below, it is waived.[42]

### 3. Willoya does not have a claim against the state for violation of its own policies and procedures.

Willoya argues that the state violated the Department of Corrections' policies and procedures by not informing his family that he had become seriously ill and was hospitalized. Willoya also claims that this violated his due

process rights. Willoya failed to raise these claims below and, therefore, he has waived them.[43]

### E. Claims Raised by Willoya in His Reply Brief but Not in His Opening Brief Have Been Waived.

■ Willoya raises several claims in his reply brief that he neither raised below nor raised in his opening brief. These claims include an alleged sexually improper remark by Popken, the state's failure to provide certain materials through discovery, Willoya's right to know about Popken's consultations with other medical professionals, Popken's alleged breach of his confidential relationship with Willoya, violation of Willoya's right to know of unfavorable test results, and the state's interference with Willoya's confidential communications to his doctor.

On December 31, 2001 the state filed a motion with this court to strike the affidavits submitted with Willoya's reply brief and to disregard the arguments that Willoya did not raise in his opening brief. We struck the affidavits submitted with the reply brief and stated that we would not consider new points raised for the first time in the reply brief, but reserved our consideration of whether the challenged arguments were raised for the

---

defense of the patient, of any party claiming through or under the patient, of any person raising the patient's condition as an element of his own case, or of any person claiming as a beneficiary of the patient through a contract to which the patient is or was a party; or after the patient's death, in any proceeding in which any party puts the condition in issue.

39. Willoya also claims that the release of his medical records violated his right to privacy, his right to a fair trial, and his right to be free from illegal searches and seizures. Since Willoya had no privacy interest in the release of his medical records, as discussed above, there could be no violation of his right to privacy. Willoya's right to be free from illegal search and seizure is not implicated in this case as it is a civil case and not a criminal case. *See D.R.C. v. State*, 646 P.2d 252, 260 (Alaska App.1982) (stating that "the fourth amendment, properly viewed in its historical context, applies to two kinds of situations: first, investigations of those suspected of crime by those performing the function of police officers; and second, area-wide exploratory investigations, with or without a suspect, carried out by specialized law enforcement officers in order to

prevent crime (including violation of health and safety regulations).")." It is unclear how the right to a fair trial relates to Willoya's claim since no specific examples are given; thus it is impossible to evaluate this claim.

40. "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const amend. VIII.

41. *Native Alaskan Reclamation & Pest Control, Inc. v. United Bank Alaska*, 685 P.2d 1211, 1215 (Alaska 1984) (stating that "[i]t is the job of the trial court, not the appellate court, to judge the credibility of the witnesses and to weigh conflicting evidence.").

42. *Brandon v. Corr. Corp. of America*, 28 P.3d 269, 280 (Alaska 2001) (stating that "[a] party may not raise an issue for the first time on appeal.") (citing *Preblich v. Zorea*, 996 P.2d 730, 736 n. 17 (Alaska 2000)).

43. *Id.*

first time in the reply brief until our consideration of the merits of this appeal. We have now fully reviewed all of the briefing. Because these arguments were not raised in the opening brief, we now hold these arguments are waived.[44]

## V. CONCLUSION

We reject Willoya's various challenges and AFFIRM the superior court's grant of summary judgment to the state.

MATTHEWS, EASTAUGH, and BRYNER, Justices, not participating.

---

**44.** Alaska R.App. P. 212(c)(3) (stating that the reply brief "may raise no contentions not previously raised in either the appellant's or appellee's briefs."); *see also Conam Alaska v. Bell Lavalin, Inc.*, 842 P.2d 148, 158 (Alaska 1992) (stating this court need not consider a theory raised for the first time in a reply brief).