# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### April 9, 2019 Session

## EVANGELINE WEBB, ET AL. v. MILTON E. MAGEE, JR., ET AL.

### Appeal from the Circuit Court for Shelby County
### No. CT-002555-15    Robert Samuel Weiss, Judge

---

### No. W2018-01305-COA-R3-CV

---

This appeal involves a re-filed health care liability action[1] in which the plaintiffs challenged the constitutionality of the health care liability act. The trial court upheld the constitutionality of the statutes and granted summary judgment in this action because the initial suit was not filed within the applicable statute of limitations. We affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which ARNOLD B. GOLDIN and KENNY W. ARMSTRONG, JJ., joined.

Louis P. Chiozza, Jr. and Christopher W. Lewis, Memphis, Tennessee, and Steven R. Walker, Somerville, Tennessee, for the appellants, Evangeline Webb, individually, and on behalf of the heirs-at-law of Charles Webb, deceased, and for Charles Webb.

Marty R. Phillips and John O. Alexander, Memphis, Tennessee, for the appellees, Milton E. Magee, Jr., as administrator ad litem for the estate of Charles Roberson, M.D., deceased, and for Charles Roberson, M.D., P.C.

Herbert H. Slatery, III, Attorney General and Reporter; Andree Sophia Blumstein, Solicitor General; and Laura Miller, Assistant Attorney General, for the intervenor-appellee, the State of Tennessee.

---

[1] Tennessee Code Annotated section 29-26-101 now defines most cases occurring in a medical context as "health care liability actions." The statute specifies that such an action "means any civil action, including claims against the state or a political subdivision thereof, alleging that a health care provider or providers have caused an injury related to the provision of, or failure to provide, health care services to a person, regardless of the theory of liability, on which the action is based." See Acts 2011, ch. 510, § 8. Effective April 23, 2012, the term "health care liability" replaced "medical malpractice" in the Code. *See* Acts 2012, ch. 798. The provisions of the revised statute apply to this action.

**OPINION**

## I.     BACKGROUND

The claims at issue relate to the alleged negligent failure to timely diagnose and treat Charles Webb ("Decedent")[2] at St. Francis Hospital on July 26, 2009. The facts of his care and treatment are not at issue in this appeal. On September 23, 2010, Decedent and his wife (collectively "Plaintiffs") filed suit against numerous defendants, including several emergency room physicians, his nurses, and the hospital. At issue here is the complaint filed against one such treating physician, Charles Roberson, M.D.

As pertinent to this appeal, Plaintiffs attempted to personally serve Dr. Roberson with a pre-suit notice letter, dated July 22, 2010. Service was not actually completed until September 16, 2010. Plaintiffs filed their complaint on September 23. Dr. Roberson moved for summary judgment, arguing that the suit was untimely filed and that the limitations period could not be extended because he had not received pre-suit notice within the time allotted by Tennessee Code Annotated section 29-26-121.[3] Plaintiffs argued extraordinary cause for their failure to comply with the statute because Defendant was uncooperative with service.[4] They alternatively challenged the constitutionality of the notice provision and the entire medical malpractice act,[5] prompting the State of Tennessee to intervene.

The case proceeded to a hearing, after which the court upheld the constitutionality of the statutes and granted summary judgment in favor of Defendant, finding, inter alia, that the complaint was filed beyond the one-year statute of limitations. Plaintiff sought interlocutory appeal. The trial court granted permission, and this court granted the application pursuant to Rule 9 of the Tennessee Rules of Appellate Procedure.[6]

---

[2] Mr. Webb died during the pendency of this action.

[3] "Any person . . . asserting a potential claim for health care liability shall give written notice of the potential claim to each health care provider that will be a named defendant at least sixty (60) days before the filing of a complaint based upon health care liability in any court of this state."

[4] Defendant filed an affidavit, attesting that he did not evade service. The record does not reflect whether this ground for relief was pursued further in the trial court. This ground was not raised as an issue on appeal.

[5] The initial action was filed prior to the passage of the revised health care liability statute.

[6] "[A]n appeal by permission may be taken from an interlocutory order of a trial court from which an appeal lies to the Supreme Court, Court of Appeals or Court of Criminal Appeals only upon application and in the discretion of the trial and appellate court."

On appeal, Plaintiffs raised the following four issues for this court's consideration: (1) whether Section 29-26-121 is an unconstitutional infringement upon the rule-making authority of the courts and Rule 3 of the Tennessee Rules of Civil Procedure; (2) whether the Health Insurance Portability and Accountability Act ("HIPAA") preempts Section 29-26-121; (3) whether Section 29-26-121 violates the equal protection and due process provisions of federal law; and (4) whether the entire medical malpractice act is unconstitutional. We found it unnecessary to consider the unconstitutionality of the Act as a whole given the facts under consideration. Following an in-depth analysis of each remaining issue, we concluded that

> [Section] 29-26-121 passes substantive due process muster as it is reasonably related to proper legislative purposes and it is neither arbitrary nor discriminatory. [Section] 29-26-121 is not an unconstitutional infringement upon the courts' rule-making authority, that it is not preempted by HIPAA, and that it does not violate the equal protection and due process provisions of state and federal law.

We remanded for further proceedings. *Webb v. Roberson*, No. W2012-01230-COA-R9-CV, 2013 WL 1645713, at *4-21 (Tenn. Ct. App. Apr. 17, 2013), *perm. app. denied* (Tenn. Dec. 23, 2013) (*Webb I*). Upon remand, Plaintiffs gave notice of voluntary dismissal of its claims against Dr. Roberson. The trial court entered an order of voluntary dismissal without prejudice on June 24, 2012.

Plaintiffs filed the instant suit with an attached certificate of good faith on June 16, 2015, after having filed pre-suit notice on April 7, 2015, by certified mail. Defendant[7] responded with a motion to dismiss, claiming that Plaintiffs could not rely upon the saving statute found at Tennessee Code Annotated section 28-1-105(a)[8] when the initial suit was untimely filed. Plaintiffs responded by asserting that they substantially complied with the notice requirements as evidenced by the fact that Defendant received notice of the suit prior to the filing of the complaint. Plaintiffs, again, alternatively challenged the constitutionality of Section 29-26-121, prompting the State to intervene in this action.

---

[7] Defendant passed away during the pendency of this litigation. Milton E. Magee, as administrator ad litem for Defendant's estate was substituted as the defendant in this case.

[8] "If the action is commenced within the time limited by a rule or statute of limitation, but the judgment or decree is rendered against the plaintiff upon any ground not concluding the plaintiff's right of action, or where the judgment or decree is rendered in favor of the plaintiff, and is arrested, or reversed on appeal, the plaintiff, or the plaintiff's representatives and privies, as the case may be, may, from time to time, commence a new action within one (1) year after the reversal or arrest."

The case proceeded to a hearing, after which the court dismissed the action, finding that Plaintiffs could not rely upon the saving state because the initial action was not filed within the applicable statute of limitations. The court further held that the limitations period could not be extended because Defendant had not received pre-suit notice within the time allotted by Tennessee Code Annotated section 29-26-121. The court also upheld the constitutionality of Section 29-26-121 as found by this court in *Webb I*. This appeal followed.

## II.    ISSUES

We consolidate and restate the issues raised on appeal as follows:

A.    Whether Plaintiffs were erroneously denied the benefit of the 120-day extension of the statute of limitations.

B.    Whether Section 29-26-121 is unconstitutional.

## III.    STANDARD OF REVIEW

The Tennessee Supreme Court has held that the proper way to challenge a plaintiff's compliance with the health care liability requirements is through a Tennessee Rules of Civil Procedure Rule 12.02(6) motion to dismiss. *Myers v. AMISUB (SFH), Inc.*, 382 S.W.3d 300, 307 (Tenn. 2012). "Once the defendant makes a properly supported motion under this rule, the burden shifts to the plaintiff to show either that it complied with the statutes or that it had extraordinary cause for failing to do so." *Id.* When reviewing a lower court's decision on a 12.02(6) motion to dismiss, the issues raised on such motion involve questions of law and will be reviewed de novo with no presumption of correctness. *Winchester v. Little*, 996 S.W.2d 818, 822 (Tenn. Ct. App. 1998).

This appeal also involves the interpretation of statutes. Statutory construction is a question of law that is reviewed de novo without any presumption of correctness. *In re Estate of Tanner*, 295 S.W.3d 610, 613 (Tenn. 2009). This court's primary objective is to carry out legislative intent without broadening or restricting the Act beyond its intended scope. *Houghton v. Aramark Educ. Res., Inc.*, 90 S.W.3d 676, 678 (Tenn. 2002). In construing legislative enactments, we presume that every word in a statute has meaning and purpose and should be given full effect if the obvious intention of the legislature is not violated by so doing. *In re C.K.G.*, 173 S.W.3d 714, 722 (Tenn. 2005). When a statute is clear, we should apply the plain meaning without complicating the task. *Eastman Chem. Co. v. Johnson*, 151 S.W.3d 503, 507 (Tenn. 2004).

# IV.    DISCUSSION

## A.

The notice provisions of the health care liability statutes, codified at Section 29-26-121, provide, in pertinent part, as follows:

(a)(1) Any person, or that person's authorized agent, asserting a potential claim for health care liability shall give written notice of the potential claim to each health care provider that will be a named defendant at least sixty (60) days before the filing of a complaint based upon health care liability in any court of this state.

* * *

(3) The requirement of service of written notice prior to suit is deemed satisfied if, within the statutes of limitations and statutes of repose applicable to the provider, one of the following occurs, as established by the specified proof of service, which shall be filed with the complaint:

(A)    Personal delivery of the notice to the health care provider or an identified individual whose job function includes receptionist for deliveries to the provider or for arrival of the provider's patients at the provider's current practice location.    Delivery must be established by an affidavit stating that the notice was personally delivered and the identity of the individual to whom the notice was delivered; or

(B)    Mailing of the notice[.]

(4) Compliance with subdivision (a)(3)(B) shall be demonstrated by filing a certificate of mailing from the United States postal service stamped with the date of mailing and an affidavit of the party mailing the notice establishing that the specified notice was timely mailed by certified mail, return receipt requested.  A copy of the notice sent shall be attached to the affidavit.  It is not necessary that the addressee of the notice sign or return the return receipt card that accompanies a letter sent by certified mail for service to be effective.

* * *

(b) If a complaint is filed in any court alleging a claim for health care liability, the pleadings shall state whether each party has complied with subsection (a) and shall provide the documentation specified in subdivision (a)(2). The court may require additional evidence of compliance to determine if the provisions of this section have been met. The court has discretion to excuse compliance with this section only for extraordinary cause shown.

(c) When notice is given to a provider as provided in this section, the applicable statutes of limitations and repose shall be extended for a period of one hundred twenty (120) days from the date of expiration of the statute of limitations and statute of repose applicable to that provider. Personal service is effective on the date of that service. Service by mail is effective on the first day that service by mail is made in compliance with subdivision (a)(2)(B). In no event shall this section operate to shorten or otherwise extend the statutes of limitations or repose applicable to any action asserting a claim for health care liability, nor shall more than one (1) extension be applicable to any provider. Once a complaint is filed alleging a claim for health care liability, the notice provisions of this section shall not apply to any person or entity that is made a party to the action thereafter by amendment to the pleadings as a result of a defendant's alleging comparative fault.

Plaintiffs argue that they are entitled to the 120-day extension because they made a valid attempt at *personal service* within the statute of limitations. They note that service by mail is complete upon mailing and that the legislature does not require the addressee to sign or return the return receipt card, thereby establishing that service may be valid even when not actually successful. They explain,

Based on this language, in order for service to be effective, a claimant does not have to prove that an addressee/provider actually received the notice letter. Thus, even if the potential defendant did not actually receive the notice, and even if the never-received HIPAA authorizations were woefully inadequate, that plaintiff will get the benefit of the 120-day extension. As a matter of internal statutory consistency, and contrary to the defense position, the same result must apply to the situation where a valid attempt at personal service is made within the statute of limitations.

We disagree. A health care liability claimant is given the choice of two forms of service to provide written notice of the potential claim. The parameters of each form are

adequately delineated in the statutes. Plaintiffs chose to attempt personal service; therefore, they must show compliance with that form of service in order to garner the benefit of the 120-day extension of the statute of limitations.

Plaintiffs were not entitled to the 120-day extension of the statute of limitations because they failed to provide written notice of the suit within the limitations period as required. The original complaint was then untimely filed without the benefit of the 120-day extension. Accordingly, Plaintiffs were also not entitled to commence a new action pursuant to the saving statute because the original action was not commenced within the applicable statute of limitations. *See* Tenn. Code Ann. § 28-1-105(a) (providing a plaintiff may only commence a new action following dismissal if the original action was "commenced within the time limited by a rule or statute of limitations").

Plaintiffs appear to argue that such an outcome deems the 120-day extension illusory and actually shortens the time in which to file suit. We disagree. A claimant may reap the benefit of the 120-day extension period and file a claim within the applicable statute of limitations as extended pursuant to statute even if written pre-suit notice is provided on the very last day of the initial limitations period. While the complaint may not be filed within 60 days of pre-suit notice, the claimant has an additional 60 days from that time in which to file suit within the 120-day extension period. An initial health care liability action filed within the extension period is also timely for purposes of the saving statute. With these considerations in mind, we affirm the court's finding that the re-filed action was untimely filed and subject to dismissal.

B.

Plaintiffs alternatively challenge the constitutionality of Section 29-26-121 and object to the trial court's use of the law of the case doctrine in dismissing their argument. They again claim that the statute restricts the fundamental right of access to the courts and that the statute is preempted by HIPAA. They add an additional claim that the statute impinges upon the fundamental right of privacy. These issues have been addressed by a separate panel of this court in the companion case filed against the hospital. *Webb v. AMISUB (SFH), Inc.*, No. W2017-COA-R3-CV, 2019 WL 1422884 (Tenn. Ct. App. March 23, 2019) (*Webb II*). We adopt the findings in *Webb II* as our own and reiterate them, as applicable, herein:

> Plaintiffs contend that HIPAA preempts § 121 because the medical-authorization requirement conflicts with HIPAA by forcing disclosure of medical information without a court order or patient consent. As an initial matter, Plaintiffs concede that the Tennessee Supreme Court has found that HIPAA does not preempt § 121. *See Stevens ex rel. Stevens v. Hickman*

- 7 -

*Cmty. Health Care Servs.*, Inc., 418 S.W.3d 547, 558 (Tenn. 2013). Even so, Plaintiffs argue that the issue should be reconsidered. "[I]ntermediate courts are not free to depart from the Tennessee Supreme Court's unequivocal holdings." *O'Dneal v. Baptist Mem'l Hosp.-Tipton*, 556 S.W.3d 759, 772 (Tenn. Ct. App. 2018), *appeal denied* (July 19, 2018). Therefore, we are bound by the holding in *Stevens* and decline to address the issue.

* * *

Plaintiffs contend the § 121(a)(2)(E)'s medical-authorization requirement violates [Decedent's] constitutional rights to equal protection, procedural due process, access to the courts, and privacy in his medical records.

In both *Webb I* and [*J.A.C. by & through Carter v. Methodist Healthcare Memphis Hosps.*, 542 S.W.3d 502 (Tenn. Ct. App. 2016)], we held that § 121 does not violate a claimant's rights to equal protection, due process, and access to the courts. *See Webb I*, 2013 WL 1645713, at *16, 19, 21; *J.A.C.*, 542 S.W.3d at 521-22. We find no reason to reconsider our reasoning in either case.

As for Plaintiffs' right-of-privacy challenge, we find that the pursuit of a health care liability action constitutes a voluntary waiver of any such right and, thus, there can be no violation of the right to privacy. In *Whalen v. Roe*, the United States Supreme Court explained that the constitutionally protected "zone of privacy" comprises "at least two different kinds of interests[:] . . . the individual interest in avoiding disclosure of personal matters, and . . . the interest in independence in making certain kinds of important decisions." 429 U.S. 589, 598-601 (1977) (footnotes omitted). The Court was considering whether the New York State Controlled Substances Act of 1972 violated these interests by recording the names and addresses of all persons who obtained prescriptions for certain drugs. *Id.* at 591. The Court recognized that "the statute threaten[ed] to impair . . . [the patients'] interest in the nondisclosure of private information," but held that the statute did not "pose a sufficiently grievous threat to either interest to establish a constitutional violation." *Id.* at 600. Even so, in *Nat'l Aeronautics & Space Admin. v. Nelson*, the Court noted that "[s]tate and federal courts have offered a number of different interpretations of *Whalen*." 562 U.S. 134, 146 n.9 (2011). While some courts have held "that disclosure of at least some kinds of personal information should be subject to a test that balances the government's interests against the

individual's interest in avoiding disclosure," others have "held that the right to informational privacy protects only intrusions upon interests 'that can be deemed fundamental or implicit in the concept of ordered liberty.'" *Id.* (quoting *J.P. v. DeSanti*, 653 F.2d 1080, 1090 (6th Cir. 1981)). The Court assumed that the privacy interest was of "constitutional significance" but held that "whatever the scope of th[e] interest," it did not prevent the challenged action. *Id.* at 147.

In *McNiel v. Cooper*, this court cited *Whalen* and its progeny for the proposition that "[p]atients have a constitutionally protected interest in avoiding the disclosure of private, personal information and their medical records fall within the sphere of constitutionally protected private information." 241 S.W.3d 886, 895 (Tenn. Ct. App. 2007) (citations omitted). The court was considering the State's right "to gain access to a patient's medical records in the context of an investigation of alleged wrong-doing by the patient's physician." *Id.* at 894. We balanced "the patient's privacy interests . . . with the public's interest in investigating the conduct of licensed physicians." *Id.* at 896 (citations omitted). We concluded that the statutory procedures for obtaining and using patient records, "when followed, protect the patient's reasonable expectation that his or her medical records will not be released improperly" because "[t]hey ensure that the [agency] will receive only those records that are necessarily related to the complaint and that these records will remain confidential until they are introduced at a disciplinary proceeding against the physician." *Id.* at 898. Accordingly, we held that compliance with a request for patient records violated none of the patient's privacy interests. *Id.*[9]

The statute sub judice differs in a significant way from those in *Whalen* and *McNiel*: the disclosure of medical records under § 121(a)(2)(E) is based on the patient's choice to sue the providers to whom the records will be given. *See Stevens*, 418 S.W.3d at 557 ("[A] plaintiff's decision whether to file suit is still a voluntary one."). In both *Whalen* and *McNiel*, the courts were considering statutes that permitted state agencies to obtain medical information without the patients' consent.

In *Webb I*, we found that § 121 did not violate a patient's statutory right of privacy under HIPAA because the patient was consenting to the disclosure of medical records by pursuing a health care liability claim. 2013 WL

---

[9] Before *McNiel*, the Tennessee Supreme Court declined to find a constitutional right of informational privacy under the Tennessee Constitution "[a]bsent a fundamental right or other compelling reason." *Doe v. Sundquist*, 2 S.W.3d 919, 921, 926 (Tenn. 1999).

1645713, at \*14. In *Stevens*, the Tennessee Supreme Court found that § 121(a)(2)(E) did not violate a claimant's right to privacy under Tennessee's implied covenant of patient-physician confidentiality for the same reason. 418 S.W.3d at 558. The fact that Plaintiffs challenge the required disclosure under the Tennessee and United States Constitutions does not change our conclusion. Like contractual or statutory rights, constitutional rights may be waived. *Poole v. Union Planters Bank, N.A.*, 337 S.W.3d 771, 778 (Tenn. Ct. App. 2010) (citing *State, Dep't of Highways v. Urban Estates, Inc.*, 465 S.W.2d 357, 360-61 (Tenn. 1971)). While Tennessee courts have not directly addressed the waiver of the right to privacy, courts in other states have found that, like other constitutional rights, the right to privacy may be waived. *See Shane v. Par. of Jefferson*, 209 So. 3d 726, 741 (La. 2015) ("[T]he right to privacy, like other personal rights, may be lost in many ways, by express or implied waiver, consent, or by a course of conduct that prevents its assertion."); *Maryland State Bd. of Physicians v. Eist*, 932 A.2d 783, 803 n.15 (Md. Ct. Spec. App. 2007) ("A person may waive his federal constitutional right to medical privacy."). More specifically, other courts have found a plaintiff waives his or her constitutional right to privacy in medical records when the plaintiff puts at issue his or her medical condition. *See Willoya v. State, Dep't of Corr.*, 53 P.3d 1115, 1124 (Alaska 2002) (holding that the plaintiff "waived any claim that his [constitutional] rights were violated" by "put[ting] his medical condition at issue"); *Montin v. Gibson*, No. 4:09-CV-3102, 2009 WL 2486441, at \*2 (D. Neb. Aug. 12, 2009) ("[A] plaintiff can waive his [constitutional] right to privacy in his medical information if he puts his medical condition at issue [in] a lawsuit."); *Ferrell v. Glen-Gery Brick*, 678 F. Supp. 111, 112–13 (E.D. Pa. 1987) (finding that plaintiff waived her constitutional right to privacy in her mental health records by placing her mental health at issue). Logically, when a plaintiff waives the right to privacy, there can be no violation of that right. *See Willoya*, 53 P.3d at 1125 n.39 ("Since [the plaintiff] had no privacy interest in the release of his medical records, . . . there could be no violation of his right to privacy.").

Moreover, "the legislature has the inherent authority to set the parameters under which a cause of action accrues and is abolished[.]" *J.A.C.*, 542 S.W.3d at 521 (quoting *Webb I*, 2013 WL 1645713, at \*15-16); *see Mills v. Wong*, 155 S.W.3d 916, 923 (Tenn. 2005) ("The Tennessee General Assembly itself has the power to weigh and to balance competing public and private interests in order to place reasonable limitations on rights of action in tort which it also has the power to create or to abolish."). By requiring plaintiffs to consent to disclose their medical records, the

legislature "merely impose[d] a step to be taken before the commencement of an action." *J.A.C.*, 542 S.W.3d at 519. Because pursuing a health care liability action constitutes a voluntary waiver, there can be no violation of the right to privacy.

*Webb II*, 2019 WL 1422884, at *3-8. Accordingly, we also affirm the trial court's dismissal of the re-filed action.

## V. CONCLUSION

We affirm the decision of the trial court and remand for such further proceedings as may be necessary. Costs of the appeal are taxed equally to the appellants, Evangeline Webb, individually, and on behalf of the heirs-at-law of Charles Webb, deceased, and for Charles Webb.

_____
JOHN W. McCLARTY, JUDGE