Evalyn PREBLICH, Appellant,

v.

Moshe ZOREA, Appellee.

No. S–8635.

Supreme Court of Alaska.

March 10, 2000.

Evalyn Preblich, pro se, Anchorage.

Moshe Zorea, pro se, Anchorage.

Before MATTHEWS, Chief Justice, EASTAUGH, FABE, BRYNER, and CARPENETI, Justices.

*OPINION*

CARPENETI, Justice.

## I. INTRODUCTION

Evalyn Preblich appeals from the summary dismissal of her attorney malpractice action against Moshe Zorea. The superior court granted summary judgment because the statute of limitations had run. Because we conclude that Preblich had sufficient information to alert her that she had a cause of action more than six years before she filed suit, we affirm.

## II. FACTS & PROCEEDINGS [1]

Preblich retained Zorea in October 1987 to represent her in a bankruptcy proceeding. After a 1988 conversion of Preblich's case from Chapter 11 to Chapter 7 of the Bankruptcy Code, Preblich and Zorea attended a meeting with Preblich's creditors. At this meeting, Preblich learned that her bankruptcy trustee was entitled to her escrow accounts and to administer her properties. Upon learning this, Preblich experienced "total surprise and dismay...."

Following the meeting, Preblich discussed her financial situation with Zorea. When Preblich expressed concern about how she would pay her bills, Preblich recalled that Zorea stated that she should look into receiving energy assistance from the state and "consider signing up for welfare."

By 1989 Preblich became increasingly dissatisfied with Zorea's representation. She stated that for a period of over two months, she left "continuous messages" for Zorea to call her, and that he never returned her calls. In August 1989 Preblich wrote a letter to the bankruptcy court in which she tried to in-

---

1. Because this case was dismissed on summary judgment, the description of the facts draws permissible inferences in favor of the non-movant, Preblich, from testimony contained in her two affidavits. *See Arctic Tug & Barge, Inc. v. Raleigh, Schwarz & Powell*, 956 P.2d 1199, 1200 (Alaska 1998) (citations omitted).

form the judge of her "distinct impression" that she "no longer had a lawyer...."

During the latter months of 1989, Preblich received a number of papers from the bankruptcy court. Preblich recalled that when she asked Zorea about these papers, he replied that they did "not make any difference" to her, or that they were "not important" to her bankruptcy action. Preblich, however, felt that the papers *did* have "significant meaning," and she consulted with other attorneys between August and September of 1989. These other attorneys told Preblich that she "should take some kind of immediate action."

On September 12, 1989 the bankruptcy court entered an order that denied Preblich a debtor's discharge. In 1989 the trustee in bankruptcy moved for summary judgment that Preblich was not entitled to a debtor's discharge. Preblich met with Zorea about a week later. When Preblich asked Zorea if he was still her lawyer, Zorea responded that he was still her attorney of record. Preblich stated that Zorea did not discuss the consequences of the denial of discharge with her, and that he said that "[i]t was too late to do anything about the bankruptcy...." On October 3, 1989 the bankruptcy court entered a final judgment that denied Preblich's discharge.[2]

On October 23 Preblich again met with Zorea and received the impression that he was through with her case. After the meeting, Preblich tried to find someone else to represent her.

On December 12, 1989 Preblich discovered that a hearing regarding the foreclosure of her home was scheduled for the next day. Zorea did not attend the hearing, nor had he informed Preblich that it was taking place. Preblich did attend and managed to delay the foreclosure. On December 27 Preblich attended a different hearing that involved other tracts of her real property. Once again, Zorea failed to attend the hearing. Preblich, however, did attend the hearing and submitted documents to the court that she prepared with the assistance of new counsel. This lawyer became Preblich's attorney of record in January 1990, remaining as her attorney until June 1990. Preblich found it "apparent" that Zorea "had absolutely no qualms or problems with this substitution, as he had not been available or ... of any help to [her] for months."

In June 1990 Preblich, acting *pro se*, filed a grievance against Zorea with the Alaska Bar Association. Zorea admitted to misconduct and stipulated to a public reprimand from the Bar Association in December 1995. On March 28, 1996 Preblich filed this lawsuit for professional malpractice.

Preblich's complaint makes numerous allegations. Among other things, it alleges that Zorea: (1) fraudulently misrepresented that he had expertise in bankruptcy and breached his contractual duty when he failed to file a Chapter 11 reorganization plan, thus forcing her into Chapter 7 liquidation; (2) failed to adequately represent her in the bankruptcy proceedings, causing the loss of valuable property; (3) failed to inform her of a judicial foreclosure on her property; (4) failed to answer the trustee's opposition to her discharge from bankruptcy; and (5) failed to return her calls or otherwise communicate with her.[3] In his answer, Zorea denied these allegations. For the purposes of appeal, these allegations are taken as true.[4]

In January 1998 Zorea moved for summary judgment on the grounds that the action was barred by the statute of limitations. Preblich opposed the motion. The superior

2. In June 1991, however, the bankruptcy court entered an order that released Preblich "from all dischargeable debts."

3. In affidavits submitted to the superior court, Preblich also alleges that Zorea: (1) failed to explain the ramifications of her transfers of real property to members of her family made within one year of the bankruptcy filing; (2) failed to explain the ramifications of her use of various escrow accounts; (3) failed to submit complete information on her assets and finances to the court; (4) failed to give her accurate advice; and (5) advised her not to reveal that she was the administrator and heir to her deceased mother's estate.

4. *See Wettanen v. Cowper,* 749 P.2d 362, 363 (Alaska 1988).

court granted it on February 27, 1998.[5]

Preblich then filed a motion for reconsideration, arguing that the statute of limitations was tolled because she had not discovered the wrongful actions until June 1990. Because Preblich was *pro se*, the court allowed her to submit additional facts in opposition to summary judgment; the court also allowed Zorea to respond. Zorea opposed Preblich's motion and submitted two affidavits prepared and signed by Preblich in 1990. These affidavits are discussed below.

The superior court denied Preblich's motion for reconsideration. In its order, the court stated that Preblich's "allegations, if true, raise serious lawyer malpractice issues." Nevertheless, it found that Preblich's affidavit[s] established that by August or September 1989, Preblich was unhappy with Zorea's representation, felt he had abandoned her, informed the bankruptcy court that Zorea no longer represented her, and began to consult other attorneys. The court found that Preblich had learned by December 1989 that she had nearly lost her home as a result of Zorea's inattention. Based on these facts, the court ruled that "reasonable minds could not differ on whether Preblich had sufficient information to alert her to a malpractice claim against Zorea prior to March 28, 1990."

Following the superior court's denial of her motion for reconsideration, Preblich moved for oral argument and an evidentiary hearing regarding the discovery issue. The court treated the motion as one for reconsideration of the order denying reconsideration, and denied it. The court noted that the new affidavit submitted by Preblich asserted that she did not actually know that she had a malpractice claim until she was within the limitations period; however, it found that the affidavit did not set forth facts material to the court's earlier holding that she should have discovered the claim earlier.

Preblich then filed this appeal.

## III. DISCUSSION

### A. Standard of Review

■ Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law."[6] This court reviews a summary judgment *de novo*.[7] "Drawing all reasonable inferences in favor of the non-movant, we determine whether the parties genuinely dispute any facts material to a viable legal theory and, if not, whether the undisputed facts entitle the movant to judgment as a matter of law."[8] The moving party bears the initial burden of proving, through admissible evidence, the absence of genuine factual disputes and its entitlement to judgment as a matter of law.[9] Once the moving party has established a prima facie case, "the non-movant is 'required, in order to prevent entry of summary judgment, to set forth specific facts showing that he could produce admissible evidence reasonably tending to dispute or contradict the movant's evidence, and thus demonstrate that a material issue of fact exists.' "[10]

### B. The Superior Court Did Not Err in Granting Zorea's Motion for Summary Judgment.

■ The six-year statute of limitations applies to this professional malpractice ac-

5. Preblich filed a second "objection to motion for summary judgment" on March 5, arguing that her failure to discover the cause of action until June 1990 tolled the statute of limitations. She also filed a motion to compel discovery on March 10, seeking Zorea's file on her bankruptcy case. She states that she had not yet received the February 27 court order, which was mailed on March 2.

6. Alaska R. Civ. P. 56(c).

7. See *Arctic Tug & Barge, Inc. v. Raleigh, Schwarz & Powell*, 956 P.2d 1199, 1200 (Alaska 1998).

8. *Id.* (citation omitted).

9. See *Shade v. Co & Anglo Alaska Serv. Corp.*, 901 P.2d 434, 437 (Alaska 1995) (citations omitted).

10. *Jennings v. State*, 566 P.2d 1304, 1309 (Alaska 1977) (internal brackets omitted) (quoting *Howarth v. First Nat'l Bank of Anchorage*, 540 P.2d 486, 489–90 (Alaska 1975)).

tion.[11] Ordinarily, the statute of limitations begins to run on the date the plaintiff is injured.[12] However, we have consistently held that the discovery rule applies to professional malpractice actions.[13]

Under the discovery rule, the cause of action accrues when the plaintiff has information sufficient to alert a reasonable person to the fact that he has a potential cause of action. At that point, he should begin an inquiry to protect his ... rights and he is "deemed to have notice of all facts which reasonable inquiry would disclose." [14]

Accordingly, Preblich was required to bring suit within six years of the time she knew or reasonably should have known of all the elements of her cause of action.

The trial court held that Preblich had failed to bring suit within six years of the time she should have discovered she had an action against Zorea, and thus her suit was time barred.

### 1. *Zorea established a prima facie case for summary judgment.*

■ Zorea submitted two affidavits signed by Preblich to support his motion for summary judgment. In these affidavits, Preblich states that she first became "extremely concerned" and "dismayed" in November *1988* when she was ordered to surrender her bank accounts and management of her property to the bankruptcy trustee. She found it "most disturbing" and was "total[ly] surprise[d]" to find that the trustee was entitled to her

escrow accounts and to manage her properties. Significantly, these events occurred over one year before the trial court found the statute of limitations had begun to run.

One of Preblich's affidavits states that in June 1989, after the trustee moved for summary judgment on his complaint to deny Preblich's discharge in bankruptcy due to an alleged fraudulent transfer of stock, Preblich again became very concerned and left numerous messages for Zorea. However, according to her affidavit, Zorea did not return a single call between June 22, 1989 and September 14, 1989. Preblich then consulted other attorneys who advised her to take immediate action.

Preblich stated that she wrote a letter in August 1989 to the bankruptcy court to inform the judge that she no longer had an attorney, and did not understand the documents she was receiving. Then, she stated that in September she finally met with Zorea and asked him if he was still her attorney. She testified that he responded that he was still her attorney of record. However, he had failed to oppose the trustee's motion, and summary judgment was granted against her by the bankruptcy court on September 12, 1989. She was served with this order. At a meeting with Zorea two days after her first September meeting, Preblich recalled Zorea stating that "[i]t was too late to do anything about the bankruptcy." She left the meeting with the distinct impression that Zorea was "finished" with her. On October 3 final judgment was entered against Preblich on summary judgment by default.[15] The discharge

11. *See Breck v. Moore,* 910 P.2d 599, 603 (Alaska 1996) (holding six-year statute of limitations applies to professional malpractice actions claiming economic loss (citing *Lee Houston & Assocs., Ltd. v. Racine,* 806 P.2d 848, 855 (Alaska 1991))); *see also* former AS 09.10.050. The legislature amended the statute of limitations in 1997, providing for a three-year limitations period for an action brought on contract which accrues after August 7, 1997. *See* AS 09.10.053.

12. *See Gudenau & Co., Inc. v. Sweeney Ins., Inc.,* 736 P.2d 763, 766 (Alaska 1987) (citing W. Keeton et al., *Prosser and Keeton on the Law of Torts* § 30, at 165 (5th ed.1984)).

13. *See Breck,* 910 P.2d at 603–04 (citing *Lee Houston,* 806 P.2d at 851 (malpractice by real estate agents); *Gudenau,* 736 P.2d at 766 (malpractice by insurance agents); *Sharrow v. Archer,*

658 P.2d 1331, 1334 (Alaska 1983) (malpractice by physician); *Greater Area Inc. v. Bookman,* 657 P.2d 828, 829–30 (Alaska 1982) (malpractice by attorney)).

14. *Pedersen v. Zielski,* 822 P.2d 903, 908 (Alaska 1991) (quoting *Mine Safety Appliances Co. v. Stiles,* 756 P.2d 288, 292 (Alaska 1988)); *see also State, Dep't of Corrections v. Welch,* 805 P.2d 979, 982 (Alaska 1991).

15. According to the Stipulation for Discipline by Consent, ABA File No. 19903114, at 5, Zorea did not answer the complaint, file an opposition brief, or otherwise oppose the summary judgment motion. The stipulation further indicates that in September 1989 the bankruptcy court granted the trustee summary judgment and denied Preblich's discharge.

of her debts that she sought was lost to her. She received notice of the final judgment.

Nevertheless, Preblich met with Zorea again in late October. Again she left with the impression that Zorea was done representing her. At this point, according to Preblich's affidavit, she began to look for another attorney.

Then, by mere chance, Preblich discovered two hearings had been scheduled in December to determine whether her residence and two tracts of land could be judicially foreclosed. She attended both hearings; Zorea did not attend either. At the first hearing, Preblich avoided foreclosure of her residence by obtaining additional time to address the court. At the second hearing, Preblich again represented herself, this time filing an objection, prepared by an attorney, to the sale of two tracts of her land. She had by then obtained the advice of a new attorney. This attorney substituted in as counsel of record in January 1990 and represented Preblich through June 1990.

Preblich stated that her new attorney reviewed her financial documents, including bank statements, stock statements, and tax returns. Preblich admitted that her new attorney then informed her that certain transfers of property were improper, and told her that her previous attorney should have discussed the improper transfers with her before filing for protection under Chapter 11.

This evidence shows that Preblich was aware no later than December 1989 that Zorea failed both to communicate with her and to represent her interests in several proceedings, which resulted in significant harmful consequences to her. By November 1988 she had lost control of management of her property and her bank accounts, including escrow accounts that were an important source of funds to her. Zorea had failed to warn her of this possibility. By August 1989 she was told by other attorneys she consulted to take immediate action to avoid further adverse consequences. When she questioned Zorea about it in September 1989, he told her it was too late to do anything about the

bankruptcy. By September 1989 she had lost her discharge in bankruptcy because Zorea failed to take any action. Then, in December, she discovered by chance that two hearings had been scheduled concerning her home and two other properties. Zorea had failed to notify her of these hearings, and he did not attend them himself. As she later stated, had she not attended the hearings she would have lost her house and two properties. She obtained the services of a new attorney in December 1989. Counsel reviewed her case and informed her of significant failings in Zorea's representation. These facts are sufficient to establish Zorea's *prima facie* case that Preblich was on notice by the end of 1989 that Zorea's neglectful behavior and the damage it had already caused her could potentially constitute professional malpractice.

### 2. Preblich did not rebut Zorea's prima facie case.

In order to prevent entry of summary judgment, Preblich was required to set forth specific facts showing that she could produce admissible evidence reasonably tending to dispute or contradict Zorea's evidence, and thus demonstrate that a material issue of fact existed as to the date of discovery.[16] She failed to do this.

In response to Zorea's factual assertions, Preblich merely stated that her case had merit. Then, in an affidavit accompanying her motion for reconsideration, Preblich made the conclusory statement that the date of discovery was June 1990, and indicated a witness could be provided if necessary. Again, she did not submit any evidence calling into question Zorea's assertions. Her opposition was insufficient to overcome Zorea's *prima facie* case that Preblich knew or should have known that she had a claim sooner.

In sum, based on the evidence before the superior court, Zorea established that Preblich had sufficient information by December 1989—well before March 28, 1990—to alert a reasonable person to the fact that Zorea's

---

**16.** *See Jennings v. State,* 566 P.2d 1304, 1309 (Alaska 1977) (quoting *Howarth v. First Nat'l* *Bank of Anchorage,* 540 P.2d 486, 489–90 (Alaska 1975)).

representation potentially constituted malpractice. Therefore, summary judgment was properly granted.

### 3. *Preblich's additional arguments*

Preblich makes two additional arguments on appeal. Each argument fails.

First, Preblich argues that the limitations period should be tolled pending final resolution of her bankruptcy action because the extent of her damages cannot be determined until that case is finally resolved.[17] However, we have consistently held that "a statute of limitations begins running when a party suffers actual damages, without regard to whether the full extent of the damages is known at the time."[18] The above analysis shows that Preblich suffered actual damage well before six years before she filed suit in this case.

Second, Preblich argues that as a lay person she lacked the legal sophistication to initially realize that her injuries were caused by Zorea, and that it was not until June 1990 that she realized that Zorea was even partly responsible. This argument lacks plausibility.

The question of when Preblich should have reasonably discovered that she had a cause of action "depends upon all of the surrounding circumstances[,]"[19] and includes consideration of her sophistication in the particular area of knowledge.[20] Preblich is not an attorney and could not be expected to immediately recognize the inadequacy or consequences of Zorea's poor representation or lack of action. However, as previously discussed, by the end of 1989, Preblich knew that she had lost control of her funds without prior knowledge that this would happen, had been denied discharge from bankruptcy on summary judgment by default, and had nearly lost her residence and two tracts of land by default. Preblich had consulted with numerous attorneys in the fall of 1989, and her new attorney began advising her in December 1989. Preblich knew she needed to take action, and should have known that Zorea's inaction had caused, at least in part, her injury. At this point, Preblich had been injured and should have been aware of the injury. The statute of limitations "begins running at the earliest point there is knowledge of injury."[21]

Moreover, in her brief before this court, Preblich states that her new lawyer "tried to undo some of the harm that had been done[,]" but quit the practice of law in June 1990. Thus, it is reasonable to conclude that her new attorney had or should have had knowledge of Preblich's potential malpractice action against Zorea prior to March 1990. The new attorney reviewed financial statements and documents submitted to the court, and informed Preblich of failings in Zorea's representation. Whatever knowledge Preblich's new attorney had is imputed to Preblich,[22] and because her new attorney should have discovered Preblich's cause of action against Zorea prior to March 28, 1990, Preblich is charged with constructive discovery prior to March 28, 1990.[23] This constitutes an additional basis to uphold the superior court's decision.

---

17. Preblich did not raise this argument below. "Ordinarily an issue which was not raised in the trial court will not be treated on appeal." *Padgett v. Theus*, 484 P.2d 697, 700 (Alaska 1971). However, we have in the past relaxed procedural requirements for *pro se* litigants. *See Breck v. Ulmer*, 745 P.2d 66, 75 (Alaska 1987). Accordingly, we address this issue briefly.

18. *Beesley v. Van Doren*, 873 P.2d 1280, 1282 (Alaska 1994) (citing *Wettanen v. Cowper*, 749 P.2d 362, 365 (Alaska 1988)).

19. *Breck v. Moore*, 910 P.2d 599, 604 (Alaska 1996).

20. *See id.* at 605 (citing *Pedersen v. Zielski*, 822 P.2d 903, 907 (Alaska 1991) (medical terminology); *Long v. Abbott Mortgage Corp.*, 459 F.Supp. 108, 116–17 & n. 6 (D.Conn.1978) (sophisticated investor); *Johnson v. Haberman & Kassoy*, 201 Cal.App.3d 1468, 247 Cal.Rptr. 614, 619 (1988) (complicated lease)).

21. *Beesley*, 873 P.2d at 1282 n. 2 (citing *Hunt v. Bittman*, 482 F.Supp. 1017, 1021–22 & n. 22 (D.D.C.1980), *aff'd* 652 F.2d 196 (D.C.Cir.1981)).

22. *See Breck*, 910 P.2d at 604–05 (citing *Pedersen*, 822 P.2d at 907 n. 5).

23. *See id.*

## IV. CONCLUSION

Because Preblich failed to raise any material factual dispute regarding the date she knew of or should have discovered her cause of action against Zorea, and because the evidence before the superior court would lead reasonable minds only to the conclusion that Preblich should have discovered the elements of the cause of action before March 1990, rendering the March 28, 1996 complaint untimely, we AFFIRM the superior court.