**Mritunjoy SENGUPTA, Appellant,**

v.

**Thomas R. WICKWIRE, Appellee.**

**No. S–11232.**

Supreme Court of Alaska.

Dec. 9, 2005.

Rehearing Denied Dec. 28, 2005.

Mritunjoy Sengupta, pro se, Mill Creek, Washington, Appellant.

Thomas R. Wickwire, pro se, Law Office of Thomas Wickwire, Fairbanks, Appellee.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

*OPINION*

FABE, Justice.

## I. INTRODUCTION

Mritunjoy Sengupta was a tenured professor at the University of Alaska Fairbanks. He was terminated for cause after a hearing officer found that he had presented false evidence during a university grievance hearing. Sengupta appealed his termination to the superior court. The superior court affirmed, and Sengupta informed his attorney that he wished to appeal that decision to the Alaska Supreme Court. His attorney filed the appeal late and it was dismissed. Sengupta then brought a lawsuit against the university alleging various violations of his constitutional rights. On appeal, this court held that Sengupta's claims were barred by res judicata because he did not timely appeal the superior court's decision in his termination proceedings. Sengupta then brought this malpractice action against his attorney, alleging that the attorney failed to file a timely appeal and failed to raise certain claims on Sengupta's behalf. Because Sengupta's attorney only agreed to appeal a single issue, we affirm the superior court's grant of summary judgment to the attorney.

## II. FACTS AND PROCEEDINGS

### A. Sengupta's Grievances Against the University of Alaska Fairbanks (Parrish Hearing)

Mritunjoy Sengupta was a tenured professor of Mining Engineering at the University of Alaska Fairbanks (UAF). In 1992 and 1993 Sengupta filed three grievances against UAF, asserting that he was not considered for promotion to acting head of his department or director of the Mining and Mineral Resource Research Institute, and that he should have received various pay increases.[1] James Parrish served as the hearing officer for Sengupta's grievance proceedings.[2] Thomas Wickwire was Sengupta's lawyer.

On June 24, 1994, Parrish issued a lengthy written decision dismissing Sengupta's grievances. Parrish found that Sengupta was not a credible witness and that he had "repeatedly and purposefully been untruthful" during the grievance proceedings. Parrish found that during the hearing Sengupta presented false documents, lied about being laid off from a previous job, and lied about unfounded public attacks he had made against colleagues. Parrish also found that Sengupta had mischaracterized his degree on his resume, that he had plagiarized the work of another professor, and that Sengupta and his wife had improperly accessed the bank account of a UAF student in an attempt to attack the professional reputation of another professor.

After Parrish issued his findings, Wickwire wrote a letter to Sengupta recommending that he initiate a communication process with the university chancellor to try to repair any damage done during the grievance hearings. Wickwire cautioned that he thought it likely that the chancellor might initiate disciplinary proceedings against Sengupta based on the Parrish findings. Wickwire informed Sengupta that he believed "Mr. Parrish [had] done a very thorough job of evaluating the evidence in detail and logically reasoning through the evidence on each point to reach his conclusions." Based on this letter, Sengupta decided not to appeal the Parrish decision.

### B. UAF Termination Proceedings Against Sengupta (Rice Hearing)

On September 1, 1994, UAF initiated termination proceedings against Sengupta

---

1. *Sengupta v. Univ. of Alaska,* 21 P.3d 1240, 1245–46 (Alaska 2001).

2. *Id.* at 1246.

based on the findings of Hearing Officer Parrish.[3] Sengupta requested and was granted a pre-termination hearing. Sengupta also filed a grievance against UAF, asserting that the termination was improper retaliation for his earlier grievances in violation of a UAF regulation prohibiting retaliation.[4] The university chancellor determined that the retaliation claim should be decided in the pending pre-termination hearing, rather than in a separate grievance proceeding.[5] The pre-termination hearing was held on December 12, 1994 before Hearing Officer Julian Rice.[6] Sengupta appeared pro se at this hearing. Rice issued a decision on January 17, 1995, in which he recommended that Sengupta be terminated for cause. Rice afforded collateral estoppel to the Parrish findings and concluded that "the University is not obligated to relitigate all of the issues covered at length in the previous grievance proceeding." Rice made a number of findings similar to those made by Hearing Officer Parrish.

On January 19, 1995, the university chancellor wrote Sengupta to inform him that she had accepted Rice's recommendations and that Sengupta would be discharged for cause. The chancellor informed Sengupta that he could appeal the decision to the university president and then pursue judicial review if he wished. Sengupta appealed to the university president and his appeal was rejected.[7]

### C. Sengupta's Appeal to the Superior Court (Hodges Decision)

On February 23, 1995, Sengupta appealed his termination to the superior court.[8] Wickwire served as Sengupta's attorney for this appeal, along with attorney Robert Groseclose. In his appeal to the superior court, Sengupta argued that: (1) under university regulations, Sengupta's termination proceedings should have included a hearing before other tenured faculty members in his department; (2) Rice should not have afforded collateral estoppel to issues decided during Sengupta's grievance proceedings; (3) many of Parrish's findings during the grievance proceedings were not relevant to Sengupta's grievances; and (4) Sengupta was entitled to a hearing on his second grievance alleging retaliation.

On August 20, 1996, Superior Court Judge Jay Hodges issued a decision affirming UAF's termination of Sengupta. Judge Hodges also affirmed UAF's decision to dismiss all of Sengupta's grievances, including the grievance alleging retaliation.

### D. Sengupta's Attempt To Appeal Judge Hodges's Decision

On August 29, 1996, Groseclose wrote Sengupta a letter informing him of Judge Hodges's decision. Groseclose informed Sengupta that "[a]ny appeal must be filed by September 19, 1996" and cautioned, "I hazard a preliminary assessment that it is unlikely the Alaska Supreme Court will conclude differently from the Superior Court. To do so, the Alaska Supreme Court, through independent review, would have to conclude that an error of law occurred." Groseclose again informed Sengupta that his right of appeal would expire on September 19, or thirty days from the issuance of the superior court's decision.

On September 2, 1996, Sengupta wrote Groseclose and Wickwire and informed them that he wished to appeal Judge Hodges's decision. Sengupta enclosed a list of conclusions made by the superior court that he believed to be erroneous. On September 12, 1996, Wickwire wrote a letter to Sengupta indicating that he would handle the appeal. In the letter, Wickwire limited the scope of his representation to a single issue:

> This confirms our phone conversation of September 12, 1996 regarding my agreement to pursue your appeal. I agree to handle the appeal and briefing of Judge

---

3. *Id.*

4. *Id.* at 1247. At this time, Sengupta did not argue that his discharge was retaliatory in violation of his constitutional right to free speech.

5. *Id.*

6. *Id.* at 1246.

7. *Id.*

8. *Id.* at 1247.

Hodges' decision for the purpose of raising just one issue: that Judge Hodges erred in concluding that you had to accept the administrative hearing before Julian Rice, instead of an administrative determination by the tenured faculty of your unit, as you had requested.

Wickwire filed a notice of appeal with this court on November 1, 1996, forty-three days after the deadline. The appeal challenged the superior court's conclusion that Sengupta did not have a right to a hearing before his tenured colleagues and was required to accept a hearing before a hearing officer. On November 29, 1996, we issued an order dismissing Sengupta's appeal because it was untimely.

### E. Sengupta's 1997 Lawsuits Against UAF and *Sengupta v. University of Alaska*

After Sengupta's appeal was dismissed, he consulted a new attorney, Robert Sparks. On January 14, 1997, Sengupta filed a complaint against UAF in superior court asserting claims relating to his termination, denial of a request for sick leave, and an alleged salary disparity. Sengupta brought claims under 42 U.S.C. § 1983 alleging that UAF had violated his freedom of speech, right to due process, and equal protection; under 42 U.S.C. § 1981 alleging discrimination on the basis of color and national origin; and under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, alleging employment discrimination.

On March 29, 1997, Sengupta filed a second complaint against UAF in superior court adding a cause of action to set aside prior judgments as void because of alleged due process violations and alleged fraud, misrepresentation, and misconduct on the part of UAF.[9] Superior Court Judge Mary E.

Greene granted summary judgment to UAF on all of Sengupta's claims in both lawsuits and awarded partial attorney's fees to UAF.[10]

Sengupta appealed to this court. In *Sengupta v. University of Alaska*, we affirmed Judge Greene's grant of summary judgment because: (1) Sengupta's § 1983 claims relating to sick leave and salary level were barred by a two-year statute of limitations;[11] (2) Sengupta's § 1983 claim alleging due process violations at the Parrish hearing was barred by a two-year statute of limitations; (3) Sengupta could not object to Hearing Officer Rice's application of collateral estoppel to the findings in the Parrish hearing because Judge Hodges affirmed Rice's application of collateral estoppel and Sengupta failed to file a timely appeal of Judge Hodges's decision;[12] (4) collateral estoppel precluded Sengupta's § 1983 claims asserting due process violations at the Rice hearing because Judge Hodges determined that Sengupta had been afforded due process and Sengupta failed to file a timely appeal of Judge Hodges's decision;[13] (5) res judicata precluded Sengupta from asserting his First Amendment claims in a separate § 1983 action because he could have asserted them at either the Parrish hearing or the Rice hearing but did not, and because he did not appeal Judge Hodges's decision;[14] (6) Sengupta did not produce any evidence to support his § 1983 equal protection claim;[15] (7) Sengupta did not produce any evidence to support his claim that UAF had fraudulently concealed documents from him;[16] (8) UAF regulations did not entitle him to a pre-termination hearing before a faculty panel;[17] and (9) Sengupta did not meet his threshold burden to produce circumstantial evidence supporting his mixed motive discrimination claims under Title VII and § 1981.[18]

---

9. *Sengupta*, 21 P.3d at 1247.

10. *Id.* at 1247–48.

11. *Id.* at 1249–50.

12. *Id.* at 1250.

13. *Id.* at 1250, 1255 n. 61.

14. *Id.* at 1254, 1255.

15. *Id.* at 1254–55.

16. *Id.* at 1256–57.

17. *Id.*

18. *Id.* at 1259. Our decision also affirmed the superior court's denial of Sengupta's request for a continuance, denial of his motion to amend the judgment of dismissal, and award of attorney's fees to UAF. *Id.* at 1259–62.

### F. Sengupta's Current Malpractice Action Against Wickwire

On March 26, 2002, Sengupta filed a pro se complaint against Thomas Wickwire[19] alleging malpractice and breach of contract.[20] The complaint asserts that "[a]t all periods of representation ... the defendant failed to protect plaintiff's record, failed to raise appropriate claims, failed to timely file an appeal and generally failed to properly represent and protect the interests of the plaintiff."

Sengupta moved for partial summary judgment, asserting that if Wickwire had filed the appeal from Judge Hodges's decision on time, Sengupta would have prevailed in his claims that UAF did not afford Sengupta due process during his pre-termination hearings and that Rice improperly applied collateral estoppel to the Parrish findings. Sengupta also claimed that Wickwire should have raised his First Amendment claims during one of his two administrative hearings. Wickwire also moved for summary judgment, arguing that all of Sengupta's claims against him were time-barred.

On August 19, 2003, Superior Court Judge Richard D. Savell granted summary judgment to Wickwire on all of the claims. Sengupta moved for relief from judgment under Alaska Civil Rule 60(b) following the issuance of Judge Savell's decision. Sengupta claimed that the superior court erred by issuing a judgment without addressing Sengupta's claim that, had Wickwire filed the appeal on time, Sengupta would have prevailed in arguing that he should have been afforded a pre-termination hearing by the tenured faculty of his unit. Judge Savell denied the motion and issued a final judgment dismissing all of Sengupta's claims.

Sengupta filed this appeal.

## III. DISCUSSION

### A. Standard of Review

We review a grant of summary judgment de novo and "will affirm if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law."[21] When reviewing a grant of summary judgment, we draw all reasonable inferences in favor of the party against whom summary judgment is entered.[22] A trial court's determination regarding the applicable statute of limitations is a question of law that we review de novo.[23] "The determination of the date on which a cause of action accrued is a factual finding" and is reviewed for clear error.[24]

### B. Sengupta's Claim of Retaliation for Free Speech

Sengupta moved for partial summary judgment on his malpractice claim against Wickwire, asserting that he could have prevailed in his first appeal to this court if Wickwire had argued at the Parrish hearing that UAF retaliated against Sengupta in violation of his First Amendment rights. Sengupta also argued that Wickwire should have raised the retaliation for free speech claim in the administrative appeal before Judge Hodges. The superior court denied Sengupta's motion for partial summary judgment and granted summary judgment to Wickwire on Sengupta's retaliation for free speech malpractice claim on the ground that Sengupta's claim was time-barred.

---

**19.** The complaint also names Wickwire's wife as a defendant.

**20.** A plaintiff must prove four elements to prevail in a legal malpractice claim:
(1) the duty of the professional to use such skill, prudence, and diligence as other members of the profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence.

*Tush v. Pharr*, 68 P.3d 1239, 1244 (Alaska 2003) (internal quotation marks and citations omitted).

**21.** *Morgan v. Fortis Benefits Ins. Co.*, 107 P.3d 267, 269 (Alaska 2005).

**22.** *Id.*

**23.** *Alderman v. Iditarod Prop., Inc.*, 104 P.3d 136, 140 (Alaska 2004).

**24.** *Id.*

As the superior court correctly noted, a six-year statute of limitations applies to professional malpractice actions accruing before August 7, 1997, as long as the action claims economic loss.[25] For actions accruing after August 7, 1997 and claiming economic loss, a three-year statute of limitations applies.[26] Malpractice actions claiming personal or reputational injury are governed by a two-year statute of limitations.[27] The superior court determined that Sengupta's complaint primarily alleged economic harm, applied the six-year statute of limitations to Sengupta's retaliation for free speech malpractice claim, and concluded that it was time-barred. We agree that the six-year statute of limitations applies, but we conclude that even if Sengupta's claim is time-barred because the limitations period did not accrue until Sengupta learned from his new attorney that he had a potential malpractice claim, any error was harmless.

■■■■ The statute of limitations ordinarily begins to run on the date the plaintiff is injured. However, we apply the discovery rule to professional malpractice actions.[28] "Under the discovery rule, the cause of action accrues when the plaintiff has information sufficient to alert a reasonable person to the fact that he has a potential cause of action. At that point, he should begin an inquiry to protect his ... rights and he is deemed to have notice of all facts which reasonable inquiry would disclose."[29] The limitations period begins to run "when a client discovers or reasonably should have discovered all the elements of the cause of action, and suffers actual damages."[30]

This standard raises the question whether Sengupta should have begun to inquire about Wickwire's conduct when Sengupta was terminated, or whether the statute of limitations was tolled until Sengupta learned from another attorney that Wickwire might have neglected to pursue certain claims. The superior court determined that Sengupta "knew of the facts upon which he bases his free speech malpractice claim" prior to March 26, 1996, six years before Sengupta filed his complaint.[31] The superior court therefore concluded that Sengupta's claim was time-barred by the six-year statute of limitations.

Sengupta argues that he did not discover that Wickwire had failed to raise his retaliation for free speech claim until his new attorney, Robert Sparks, advised him of the potential claim in January 1997. He relies on *Preblich v. Zorea*, in which we observed that the date on which a client should reasonably discover the existence of a cause of action "depends upon all of the surrounding circumstances."[32] We reasoned that the circumstances include "consideration of [the client's] sophistication in the particular area of knowledge" and noted that "Preblich [was] not an attorney and could not be expected to immediately recognize the inadequacy or consequences of [her lawyer's] poor representation or lack of action."[33] Sengupta's argument is that because as a layman he could not reasonably have been expected to know that he had a potential retaliation for free speech claim prior to learning about it from Sparks, it follows that he could not have known until then that he had a potential malpractice action against Wickwire for failing to raise the claim. But we need not decide this question. Even if the superior court erred when it determined that Sengupta's claim was time-barred, the error was harmless because the

**25.** *Preblich v. Zorea*, 996 P.2d 730, 734 n. 11 (Alaska 2000) (citing *Breck v. Moore*, 910 P.2d 599, 603 (Alaska 1996)); *see also* former AS 09.10.050 (ch. 26 §§ 3–4, SLA 1997).

**26.** *Preblich*, 996 P.2d at 734 n. 11; AS 09.10.053.

**27.** *Breck v. Moore*, 910 P.2d 599, 603 (Alaska 1996); *Lee Houston & Assocs., Ltd. v. Racine*, 806 P.2d 848, 855 (Alaska 1991); AS 09.10.070.

**28.** *Preblich*, 996 P.2d at 734.

**29.** *Id.* (internal quotation marks and citations omitted).

**30.** *Beesley v. Van Doren*, 873 P.2d 1280, 1283 (Alaska 1994).

**31.** Sengupta filed his complaint on March 26, 2002.

**32.** *Id.* at 736 (citing *Breck*, 910 P.2d at 604).

**33.** *Id.; see also Greater Area Inc. v. Bookman*, 657 P.2d 828, 829 (Alaska 1982) (adopting discovery rule for malpractice actions because clients are often not equipped to detect malpractice when it occurs).

only retaliation claim Wickwire could have raised at the Parrish hearing related to UAF's denial of Sengupta's request for a raise, which is not an issue in this appeal.

At Sengupta's initial grievance hearing, Parrish found that Sengupta had made false allegations about colleagues in a letter he sent to a state representative, the Governor, and the state board of engineering. Sengupta claims that Wickwire should have argued that Sengupta's letter was protected by the First Amendment. But Sengupta argues only that UAF retaliated against him when it terminated him following the Parrish hearing. As the superior court notes, UAF did not take action to terminate Sengupta until *after* the Parrish hearing. Thus, the logical forum for raising the retaliation for free speech claim would have been at the Rice pre-termination hearing, where Sengupta appeared pro se. Although Wickwire could have raised the retaliation claim in connection with Parrish's decision to deny Sengupta's grievances regarding pay and promotions, these grievances are not issues in this appeal.[34]

Sengupta's argument that Wickwire should have raised the retaliation issue during the administrative appeal before Judge Hodges is similarly without merit. This issue would have been considered waived in the appeal before Judge Hodges because Sengupta did not raise it when he appeared pro se during the Rice hearing.[35] Because Wickwire could not have raised Sengupta's retaliation for free speech claim in connection with his termination at either the Parrish hearing or during the Hodges appeal, we affirm the

superior court's grant of summary judgment to Wickwire on this issue.[36]

## C. Wickwire's Failure To Appeal Judge Hodges's Decision in a Timely Manner

■ Sengupta's remaining claims involve Wickwire's failure to appeal Judge Hodges's decision in a timely manner. Sengupta argues that if Wickwire had filed the appeal on time, Sengupta could have won his appeal to this court on the questions whether his due process was violated at the pre-termination hearing and whether Rice improperly afforded collateral estoppel to the Parrish findings.[37] Sengupta argues that the superior court erred in granting summary judgment to Wickwire on the ground that Wickwire limited the scope of his representation to a single issue for the appeal of Judge Hodges's decision.[38]

Sengupta argues that he wished to appeal the entirety of Judge Hodges's decision and that he understood that his appeal would include all of the points stated in Sengupta's September 2, 1996 letter to Wickwire. Sengupta also argues that he could have amended or supplemented his appeal to include more issues and that this court could have reviewed all issues of law presented to Judge Hodges, regardless of which issues Sengupta actually appealed.

Sengupta did not present any evidence to the superior court indicating that he did not receive Wickwire's letter or that he did not agree to the terms of the representation at the time Wickwire sent the letter. In fact, Sengupta states in an affidavit that "Wick-

---

**34.** Sengupta states in his reply to Wickwire's opposition to his partial summary judgment motion that "Sengupta is not claiming any salary raise loss as damage against Wickwire in this complaint."

**35.** *See Brandon v. Corrections Corp. of Am.*, 28 P.3d 269, 280 (Alaska 2001) (concluding that argument not raised below was waived).

**36.** Sengupta also argues that Wickwire committed malpractice by failing to argue that Parrish was not validly appointed as a hearing officer. This argument was not raised below and is therefore waived. *Id.*

**37.** Sengupta also argues that he could have proved that UAF did not meet its burden of proof

at the pre-termination hearing because it adopted the findings from the grievance hearing, where Sengupta had the burden of proof. This argument is an element of his collateral estoppel argument.

**38.** Alaska Rule of Professional Conduct 1.2(c) permits a lawyer to limit the scope of the representation "if the limitation is reasonable under the circumstances and the client consents after consultation." The comment to this rule states that "a lawyer is not required to pursue objectives or employ means simply because a client may wish that the lawyer do so." Alaska R. Prof. Conduct 1.2(c) & comment.

wire signed an agreement with Sengupta on September 12, 1996." This acknowledgment of an "agreement" apparently refers to Wickwire's letter limiting the scope of his representation in the appeal to a single issue: "that Judge Hodges erred in concluding that [Sengupta] had to accept the administrative hearing before Julian Rice, instead of an administrative determination by the tenured faculty of [Sengupta's] unit." Sengupta paid Wickwire $10,000, as the letter requested, and when Wickwire did file the late appeal, he only included the single issue identified in the letter. Sengupta failed to provide any evidence to the trial court to support his argument that he understood that all of the issues would be appealed, or that he would have personally appealed additional issues. All of the evidence points to the agreement that Wickwire would only appeal a single issue.

The superior court did not address whether Sengupta was harmed by Wickwire's failure to file a timely appeal on the single issue that he did agree to appeal: whether Sengupta was entitled to a pre-termination hearing before a faculty panel.[39] This omission is harmless because Sengupta cannot establish that he was injured by Wickwire's failure to appeal this issue in a timely manner. In *Sengupta v. University of Alaska*, we concluded that Sengupta was not entitled to a pre-termination hearing before a faculty panel under the UAF regulations in effect at the time of his termination proceedings.[40] Sengupta therefore could not have prevailed on this claim even if Wickwire had filed his appeal on time. Because Wickwire and Sengupta agreed to limit the scope of Wickwire's representation to a single point on appeal, we affirm the superior court's grant of summary judgment to Wickwire.[41]

## IV. CONCLUSION

For the reasons discussed above, we AFFIRM the superior court's order granting summary judgment to Wickwire on all issues.

39. Following Judge Savell's decision, Sengupta moved for relief from judgment, arguing that his case should go to trial on the question whether Wickwire committed malpractice by failing to appeal Judge Hodges's decision that Sengupta was not entitled to a pre-termination hearing before a faculty panel. Judge Savell denied the motion and entered a final judgment.

40. 21 P.3d at 1256–57.

41. Sengupta stated at oral argument that Wickwire owes him money relating to Wickwire's representation. The record reflects that the parties had a hearing regarding fees before a fee arbitration panel. If Wickwire has not complied with the fee arbitration panel's decision, Sengupta's remedy is to contact the Alaska Bar Association. *See* Alaska Bar Rule 34 (outlining general principles of fee dispute resolution).