**Blanche L. CRAGLE, Appellant,**

v.

**Marie GRAY, Appellee.**

No. S–12765.

Supreme Court of Alaska.

May 8, 2009.

---

Robert D. Lewis, Lewis & Thomas, P.C., Nome, for Appellant.

Andrew J. Fierro, Law Office of Andrew J. Fierro, Inc., Anchorage, for Appellee.

Before: FABE, Chief Justice,
MATTHEWS, EASTAUGH, and
WINFREE, Justices.

*OPINION*

EASTAUGH, Justice.

## I. INTRODUCTION

The parties in this case contest the ownership of Elizabeth Sarren's Unalakleet house. Sarren died in 2000. Her will left the house to her daughter, Blanche Cragle. But Sarren's granddaughter, Marie Gray, claimed that Sarren orally agreed to give Gray the house if Gray would be Sarren's live-in caregiver until Sarren died. Gray cared for Sarren until Sarren's death, but after Sarren died the house was conveyed to Cragle per Sarren's will. Cragle sued to evict Gray; Gray counterclaimed to quiet title. After a four-day jury trial, the superior court awarded the house to Gray. Cragle appeals the denial of her pre-trial motion for partial summary judgment. We conclude that AS 13.12.514, which provides that oral succession contracts are unenforceable, controls. We therefore reverse.

## II. FACTS AND PROCEEDINGS

Elizabeth Sarren was Blanche Cragle's mother and Marie Gray's grandmother. Sarren owned and lived in a house in Unalakleet. According to Gray, in September 1999 Sarren made an oral promise to Gray to give Gray the house if Gray would reside with and take care of Sarren until Sarren's death. It appears to be undisputed that Gray moved into the Unalakleet residence in October 1999 and cared for Sarren until Sarren died in January 2000.

Sarren's will, executed in October 1983, did not mention any agreement to give the house to Gray but instead "bequeath[ed]" the house to Cragle, who was also the will's executrix. The will bequeathed other property to Gray, including half of Sarren's shares in regional and village corporations. In September 2001 Cragle executed an administrator's deed conveying the Unalakleet house to herself in accordance with the will. Gray continued to reside in the house with her children.

In late 2005 Cragle served Gray with a written notice to quit and filed a forcible entry and detainer action against Gray. Gray answered and counterclaimed, alleging that she had equitable title to the property.

Cragle moved for partial summary judgment, arguing that the statute of frauds barred Gray from claiming ownership of the house. The superior court denied Cragle's motion, concluding that a genuine issue of material fact remained as to the existence of an oral agreement between Gray and Sarren. The court reasoned that if such an agreement existed and Gray had fully performed, an exception to the statute of frauds would excuse the lack of a writing. It therefore concluded that if a jury found that (1) Sarren made the promise Gray described and (2) Gray "fully performed her part of the bargain, then at the time of her death, Ms. Sarren's property was conveyed" to Gray.

Cragle moved for reconsideration, arguing in part that Gray's claim to Sarren's house was time barred by the statutes of limitations for probate and contract claims. Gray responded that her counterclaim was timely because the ten-year statute of limitations for actions relating to real property applied, giving her at least ten years in which to defend her right to possession. The superior court denied reconsideration. It concluded that, if two statutes might reasonably apply to a claim, the statute providing for the longer period is preferred.

The superior court then held a four-day jury trial, in part to determine ownership of the house. At the end of the trial, the jury was asked to answer the following questions: (1)"Did Elizabeth Sarren offer to give the house to Marie Gray in exchange for Marie taking care of Elizabeth for the rest of her life?"; (2) "Did Elizabeth Sarren intend to give the house to Marie Gray when she made the offer?"; and (3) "Did Marie Gray provide care to Elizabeth Sarren until her death in reliance on the offer?" The jury answered "yes" to each question. The superior court then awarded possession and ownership of the house to Gray. The court also awarded attorney's fees to Gray.

Cragle appeals, arguing that the decision denying partial summary judgment should be

reversed. Cragle did not initially argue that AS 13.12.514, the statute that renders unenforceable oral contracts to make a devise, applied in the present case. Because it appeared to us that AS 13.12.514 might be controlling, we asked the parties to submit supplemental briefs discussing whether the statute applied, and, if so, what the appropriate remedy would be.

## III. DISCUSSION

### A. Standard of Review

 We apply the independent judgment standard of review when interpreting and applying statutes.[1] We likewise apply our independent judgment when interpreting and applying statutes of limitations.[2] We review grants of summary judgment de novo, drawing all permissible factual inferences in favor of, and viewing the facts in the light most favorable to, the non-prevailing party.[3] We will affirm a grant of summary judgment if there are no genuine issues of material fact and the prevailing party was entitled to judgment as a matter of law.[4]

 A trial court's determination about which statute of limitations applies is a question of law that we review de novo.[5]

### B. Whether the Agreement Between Sarren and Gray Was Unenforceable Under AS 13.12.514 as an Oral Contract To Make a Devise

 Gray's claim to Sarren's house originates from the alleged oral agreement under which Gray undertook to take care of Sarren in exchange for Sarren's promise that the house in Unalakleet "would belong to [Gray]

upon [Sarren's] death." Although the court awarded the house to Gray in part because the jury found that Sarren had in fact made such a promise, the award cannot stand if AS 13.12.514 made the agreement unenforceable as a matter of law.[6]

Alaska Statute 13.12.514 governs how succession contracts, including a contract to make a devise, may be established. It provides:

**Contracts concerning succession.** (a) A contract to make a will or devise, or not to revoke a will or devise, or to die intestate, if executed after January 1, 1997, may be established only by

(1) provisions of a will stating material provisions of the contract;

(2) an express reference in a will to a contract and extrinsic evidence proving the terms of the contract; or

(3) a writing signed by the decedent evidencing the contract.

(b) The execution of a joint will or mutual wills does not create a presumption of a contract not to revoke the will or wills.

Adopted from section 2–514 of the Uniform Probate Code (UPC), AS 13.12.514 operates to limit the ways in which a contract to make a devise may be established or proved.[7] The commentary in the UPC Practice Manual states that the provision was intended primarily to curb litigation by "tighten[ing] the methods by which contracts concerning succession may be proved."[8]

We must therefore determine whether the agreement alleged by Gray was a succession contract that was subject to AS 13.12.514.

---

1. *Deal v. Kearney,* 851 P.2d 1353, 1356 n. 4 (Alaska 1993) (citing *Hertz v. Carothers,* 784 P.2d 659, 660 (Alaska 1990)).

2. *Fernandes v. Portwine,* 56 P.3d 1, 4 (Alaska 2002) (citing *Pedersen v. Flannery,* 863 P.2d 856, 857 n. 1 (Alaska 1993)).

3. *Rockstad v. Erikson,* 113 P.3d 1215, 1219 (Alaska 2005).

4. *Id.* at 1219.

5. *Sengupta v. Wickwire,* 124 P.3d 748, 752 (Alaska 2005) (citing *Alderman v. Iditarod Prop., Inc.,* 104 P.3d 136, 140 (Alaska 2004)).

6. On appeal Cragle seems to implicitly dispute whether the "alleged agreement" ever existed. The application of section .514 does not turn on whether there actually was such an agreement, but on whether Gray's award is based on a claim that there was such an agreement.

7. UNIF. PROBATE CODE § 2–514 (2006).

8. 1 UNIFORM PROBATE CODE PRACTICE MANUAL § 2–701, at 129–30 (1977).

■ Neither Cragle nor Gray argues that AS 13.12.514 applies in the present case. Although it appears to be undisputed that the alleged oral agreement between Gray and Sarren was entered into after January 1, 1997 (the statute's watershed date), both parties seem to explicitly contend or to implicitly assume that Gray and Sarren's arrangement was not a succession contract.

■ We generally decline to review issues not raised in the superior court except to the extent there may be plain error.[9] And here Cragle has not argued, even on appeal, that the statute applies. But we also have held that if an unraised issue "involves a question of law that is critical to a proper and just decision, we will not hesitate to consider it, particularly after calling the matter to the attention of the parties and affording them the opportunity to brief the issue."[10]

We gave Cragle and Gray an opportunity to file supplemental briefs discussing AS 13.12.514. Neither party squarely argues that the statute applies; not even Cragle, who had the greatest interest in establishing that any agreement between Gray and Sarren was unenforceable. But the fact no party argues that the statute applies is not controlling. Because we conclude that the statute's applicability involves both a question of law that is critical to a just and proper resolution of this case and a legislative policy choice about how a claim of this sort must be established, we must independently analyze whether AS 13.12.514 applies. That analysis is particularly appropriate here, given that the factual essence of Cragle's superior court statute of frauds argument—that there was no writing—bears on section .514's application. Gray had full opportunity in responding to that argument to demonstrate that there was a writing, an important topic of

common relevance to the statute of frauds and section .514.

■ Whether AS 13.12.514(a) controls here depends on whether the arrangement between Gray and Sarren was an oral contract "to make ... a devise" of property. Alaska Statute 13.06.050(10) defines "devise" when the word is used as a noun to mean "a *testamentary* disposition of real or personal property."[11] Thus, unlike a conveyance of land, a devise does not pass any interest in property or create rights in others until the death of its maker.[12] Before AS 13.12.514 was enacted in 1996, we observed that

> a contract to make a bequest or devise requires the promisor to execute, during his lifetime, a will in satisfaction of the contractual obligation. Although any will so made remains entirely revocable by the testator, if at the moment of death the promisor has not made the agreed testamentary gift, a breach of contract occurs.[13]

To determine whether Sarren's agreement with Gray was an oral contract to make a devise, we begin by considering what the parties have argued. Gray argued that Sarren had entered into an agreement for transfer of the house. She contended that the transfer took place when Sarren made the promise in September 1999, not upon Sarren's death in January 2000. Gray argued that the resulting inter vivos transfer took the house out of the estate and therefore out of the will. But Gray's superior court affidavit more accurately described both the terms and the nature of the alleged agreement: "On September 13, 1999 my grandmother, Elizabeth Sarren, asked me and my children to move into her house and take care of her and *she would give me the house following*

---

9. *Miller v. Sears,* 636 P.2d 1183, 1189 (Alaska 1981).

10. *Vest v. First Nat'l Bank of Fairbanks,* 659 P.2d 1233, 1234 n. 2 (Alaska 1983) (citing *State v. First Nat'l Bank of Anchorage,* 660 P.2d 406, 422–23 (Alaska 1982); *Stone v. Stone,* 647 P.2d 582, 585–86 (Alaska 1982); *Dresser Indus., Inc. v. Alaska Dep't of Labor,* 633 P.2d 998, 1004–06 (Alaska 1981); *Libby v. Dillingham,* 612 P.2d 33, 41–42 (Alaska 1980)), *reh'g granted on other grounds,* 670 P.2d 707 (Alaska 1983).

11. AS 13.06.050(10) (emphasis added).

12. 1 William Herbert Page & Jeffrey A. Schoenblum, Page on the Law of Wills § 1.1, at 1 n. 2 (2003).

13. *Estate of Lampert Through Thurston v. Estate of Lampert Through Stauffer,* 896 P.2d 214, 218–19 (Alaska 1995) (citing *McBain v. Pratt,* 514 P.2d 823, 826 (Alaska 1973)).

*her death."* (Emphasis added.) The superior court described the claim similarly: "Ms. Gray avers that her grandmother agreed to give the house to her if she would take care of Ms. Sarren until her death." In rejecting Cragle's statute of frauds motion, the superior court reasoned that, if a jury found that the promise Gray described was made and that Gray "fully performed her part of the bargain, then *at the time of her death,* Ms. Sarren's property was conveyed" to Gray. (Emphasis added.)

The factual essence of Gray's claim as she describes it on appeal is that in September 1999 she and Sarren "orally agreed that the house owned by [Sarren] in Unalakleet *would belong to [Gray] upon [Sarren's] death."* [14] (Emphasis added.)

Cragle's supplemental appellate brief asserts that there was an "alleged oral agreement" calling for the conveyance to Gray of Sarren's interest in the house "apparently at the moment of [Sarren's] death." (Internal quotations omitted.) Cragle describes the alleged arrangement as follows: "That agreement was alleged to be for conveyance of [Sarren's] ownership interest in the house where [Sarren] was living to [Gray] (apparently at the moment of [Sarren's] death) in exchange for [Gray's] promise to care for [Sarren]."

The statute has effect here even though the jury found that Sarren offered to give the house to Gray in exchange for Gray taking care of Sarren for the rest of Sarren's life. Given the jury's apparent finding that Sarren actually entered into the disputed oral agreement, one might wonder why that finding does not control. But the jury's finding is of no legal consequence if AS 13.12.514 rendered Gray's claim unenforceable as a matter of law. Whether her claim was unenforceable ultimately depends on whether the transfer of the house from Sarren to Gray was intended to occur only upon Sarren's death.

As we have seen, there is no genuine dispute about the basis for Gray's claim; it was that there was an agreement that the house would be transferred to Gray *after* Sarren died. Only then could it be determined whether Gray had "fully performed" her part of the alleged agreement. The agreement was therefore a contract to make a devise. We accordingly hold that AS 13.12.514 limited the methods by which Gray could prove the existence of the contract. Although we have never before interpreted the meaning and effect of AS 13.12.514(a), a plain reading of that statute indicates that oral succession contracts that are not reduced to writing are unenforceable. Alaska Statute 13.12.514(a) provides that contracts to make a devise of property "may be established *only* " by means of provision or reference in a will or other writing signed by the decedent.[15]

The Montana Supreme Court has considered the effect of an almost identical succession contract statute in resolving factually similar disputes.[16] That court held in *Orlando v. Prewett* that the text of the succession contract statute is "absolute" and that a contract to make a devise may be established only by the means specifically enumerated in the statute.[17] In that case an uncle allegedly made an oral promise to his niece and her husband that he would leave them a one-half interest in his ranch at the time of his death if they would rent and operate the ranch

---

14. On appeal, Gray describes the alleged agreement as follows: "In September 1999 [Sarren] and [Gray] orally agreed that the house owned by [Sarren] in Unalakleet would belong to [Gray] upon [Sarren's] death. The agreement was that [Gray] would take care of [Sarren] as a live-in caretaker until her death."

15. AS 13.12.514(a) (emphasis added).

16. MONT.CODE ANN. § 72–2–534(1) (2007) provides:
 (1) A contract to make a will or devise or not to revoke a will or devise or to die intestate, if executed after July 1, 1975, may be established only by:
 (a) provisions of a will stating material provisions of the contract;
 (b) an express reference in a will to a contract and extrinsic evidence proving the terms of the contract; or
 (c) a writing signed by the decedent evidencing the contract.

17. *Orlando v. Prewett*, 218 Mont. 5, 705 P.2d 593, 596 (1985).

until he died.[18] An oral agreement was reached and the niece and her husband ran the ranch until the uncle died two years later.[19] The Montana court held that the oral agreement was without force and effect because it had not been reduced to writing.[20] The court reasoned that written evidence is particularly necessary to establish succession contracts given that unscrupulous claimants might otherwise rely on perjured testimony when the promisor is no longer available to confirm or deny the existence of the contract.[21]

The Montana Supreme Court reached a similar result in *In re Estate of Braaten*.[22] In that case a stepfather allegedly made an oral promise to leave his house to his stepson if the stepson cared for him until his death.[23] The stepson cared for the stepfather until the stepfather died twelve years later.[24] The stepfather left his entire estate to someone else.[25] The stepson sued for possession of the house but later requested just the value of the services he had provided his stepfather over the years.[26] The trial court awarded the stepson $44,100 for the value of his services, but the Montana Supreme Court reversed, holding that the stepson did not have an enforceable contract with his stepfather.[27]

We are persuaded by the statute's text and by these decisions that AS 13.12.514 is absolute and that a contract for a devise may be established only in the ways specifically enumerated in the statute.[28]

Gray and Sarren's alleged oral agreement was not incorporated in or referred to in Sarren's will. Nor was it otherwise reduced to writing and signed by Sarren before her death. It therefore did not satisfy any of the statute's alternative requirements for proving such a claim.[29] We consequently hold that Sarren's alleged promise to transfer the house in exchange for Gray's services is unenforceable. Because Gray does not allege any other theory for obtaining title to the house, we reverse the decision awarding the house to Gray. We also vacate the attorney's fees award because Gray is no longer the prevailing party.

Gray argued in the superior court that a transfer occurred before Sarren's death, taking the house out of Sarren's estate. Our conclusion that the alleged agreement contemplated a transfer at the time of Sarren's death necessarily disposes of this argument.

## IV. CONCLUSION

Because AS 13.12.514 renders the oral agreement between Gray and Sarren unenforceable, we REVERSE the award of the Unalakleet house to Gray. Because Gray is no longer the prevailing party, we also VACATE the attorney's fees award.

CARPENETI, Justice, not participating.

18. *Id.* at 594.

19. *Id.*

20. *Id.* at 598.

21. *Id.*

22. *In re Estate of Braaten*, 322 Mont. 364, 96 P.3d 1125, 1126–27 (2004).

23. *Id.* at 1125, 1127.

24. *Id.* at 1125.

25. *Id.*

26. *Id.* at 1126.

27. *Id.* at 1126–27.

28. We note that Gray has not asserted an equitable or quasi-contractual claim to recover the fair value of services she rendered to Sarren in reliance on the oral agreement that we hold was unenforceable. We express no view whether AS 13.12.514 would have permitted such a claim against Sarren's estate (*see* AS 13.16.020, .465), the distributees of the estate (*see* AS 13.16.020, .635), or the former personal representative of the estate (*see* AS 13.16.020, .640). Nor do we express any opinion about whether such a claim would have been barred by laches or the statutes of limitations set forth in AS 13.16.460 (limitations for claims against estate), AS 13.16.645 (limitations for claims against distributees), or AS 13.16.640 (limitations for claims against former personal representative).

29. AS 13.12.514(a).