# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### January 15, 2019 Session

## EVANGELINE WEBB ET AL. v. AMISUB (SFH) INC.

**Appeal from the Circuit Court for Shelby County**
**No. CT-001352-17  Robert Samual Weiss, Judge**

_____

### No. W2017-02539-COA-R3-CV
_____

This appeal arises from a re-filed health care liability action brought by the wife of a hospital patient, individually and on behalf of her now-deceased husband, against the hospital. In the first action, the plaintiffs attempted to rely on the 120-day extension to the statute of limitations provided by Tenn. Code Ann. § 29-26-121, which also required the plaintiffs to provide a HIPAA-compliant medical authorization to potential defendants. The complaint asserted that one of the hospital's doctors and four of its nurses were negligent in treating the husband in the hospital's emergency department on July 26, 2009, and that the hospital was vicariously liable. The doctor and nurses, but not Saint Francis, successfully moved for summary judgment based on the plaintiffs' failure to comply with § 121. On interlocutory appeal, the plaintiffs challenged the constitutionality of § 121's pre-suit notice requirement. This court affirmed the trial court's determinations that § 121 was constitutional, was not preempted by HIPAA, and did not violate the equal protection and due process provisions of state and federal law. Accordingly, this court affirmed the dismissal of the claims against the doctor and nurses. Because the claims against the hospital remained, we remanded the case for further proceedings. The plaintiffs voluntarily dismissed the first complaint against the hospital in April 2016. Eight months later, the plaintiffs sent the hospital a new pre-suit notice and medical authorization. Sixty-four days after that, the plaintiffs filed their second complaint against the hospital. The hospital moved to dismiss, asserting the second complaint was time-barred because the plaintiffs failed to provide a HIPAA-compliant medical authorization in the first action and, thus, the 120-day extension was not available and the original complaint was time-barred. The plaintiffs responded by asserting that a HIPAA-compliant medical authorization is unnecessary to obtain the 120-day extension and challenging the constitutionality of § 121, including a challenge based on the right to privacy in medical information. The trial court found that § 121 requires a HIPAA-compliant medical authorization before the 120-day extension applies, the law of the case doctrine barred the plaintiffs from re-litigating all constitutional challenges except that based on the right of privacy, and the right to privacy was not implicated. Based on these

findings, the trial court dismissed the second complaint as time-barred. This appeal followed. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S. and WILLIAM B. ACREE, JR., SR. J., joined.

Louis Peo Chiozza, Jr., Memphis, Tennessee, and Steven Rand Walker, Somerville, Tennessee, for the appellant, Evangeline Webb.

Karen S. Koplon and Taylor Barrett Davidson, Memphis, Tennessee, for the appellees, AMISUB (SFH), Inc., and AMISUB (SFH), Inc., d/b/a Saint Francis Hospital.

Herbert H. Slatery, III, Attorney General and Reporter, Andrée S. Blumstein, Solicitor General, Stephanie A. Bergmeyer, Senior Assistant Attorney General, and Laura Elizabeth Miller, Assistant Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTUAL AND PROCEDURAL HISTORY

The claims at issue relate to the care provided to Charles Webb at Saint Francis Hospital on July 26, 2009. On that day, Mr. Webb visited the Saint Francis emergency department complaining of dizziness, trouble walking, and weakness in both legs. A physician and the nursing staff in the emergency department at Saint Francis conducted several tests and released Mr. Webb the same day. Three days later, Mr. Webb was examined by his personal physician, who sent Mr. Webb back to the Emergency Department. Subsequent tests revealed that Mr. Webb had cancer.

### I. THE 2010 ACTION

On July 21, 2010, Mr. Webb and his wife, Evangeline Webb, (collectively, "Plaintiffs"), mailed pre-suit notice letters to AMISUB (SFH), Inc., and AMISUB (SFH), Inc. d/b/a Saint Francis Hospital ("Saint Francis") along with notices to other health care providers. The notices alleged that Saint Francis, through the emergency room physician and nursing staff, negligently failed to treat Mr. Webb on July 26, 2009, resulting in paralysis of both legs. Included with the notices were signed forms, purportedly authorizing the release of Mr. Webb's medical records; however, the portion of the forms designating to whom the records may be released was left blank.

On September 23, 2010, which was more than one year after the alleged injury, Plaintiffs filed a health care liability action against Saint Francis as well as Charles

- 2 -

Roberson, M.D., who examined Mr. Webb in the emergency room, and four Saint Francis nurses ("the Nurses"), who were working in the emergency room on the day at issue. All of the defendants filed answers to the complaint, denying any liability.

Thereafter, Dr. Roberson and the Nurses—but not Saint Francis—filed motions for summary judgment.[1] The defendants contended that the pre-suit notices failed to comply with the Tennessee Health Care Liability Act's pre-suit notice statute, Tenn. Code Ann. § 29-26-121, because, *inter alia*, the notices did not include a HIPAA-compliant medical authorization permitting the defendants to obtain Mr. Webb's medical records from each other. Based on this and other deficiencies, they contended the claims were time-barred because Plaintiffs were not entitled to the 120-day extension to the statute of limitations under § 121(c). In response, Plaintiffs challenged the constitutionality of § 121 under the equal protection and due process provisions of the Tennessee and United States Constitutions. Thereafter, the State of Tennessee was permitted to intervene to defend against the constitutional challenges.

The trial court ruled that § 121 is constitutional and that Plaintiffs' complaint was barred by the one-year statute of limitations because Plaintiffs failed to comply with the statute's requirements. Plaintiffs then sought and obtained permission from the trial court and this court to pursue an interlocutory appeal pursuant to Tennessee Rule of Appellate Procedure 9.[2]

In the interlocutory appeal, Plaintiffs raised two issues pertinent to the case at bar: (1) whether HIPAA preempts § 121; and (2) whether § 121 violates the equal protection and due process provisions of the Tennessee and United States Constitutions. *Webb v. Roberson*, No. W2012-01230-COA-R9-CV, 2013 WL 1645713, at *1 (Tenn. Ct. App. Apr. 17, 2013) [hereinafter *Webb I*]. We affirmed the trial court's finding that § 121 did not conflict with HIPAA and did not violate Plaintiffs' constitutional rights, and we remanded the case for further proceedings. *Id*.

On remand, Saint Francis filed a Motion to Dismiss on the grounds that Plaintiffs failed to prosecute the case and failed to provide a HIPAA-compliant medical authorization with the pre-suit notice. Plaintiffs responded to the motion by giving notice

---

[1] The Nurses' motion was styled as a motion to dismiss, but the trial court treated it as a motion for summary judgment.

[2] The dismissal of Dr. Roberson and the Nurses did not constitute a final, appealable judgment because the claims against Saint Francis had not been dismissed.

of voluntary dismissal of their claims against Saint Francis, and an order dismissing Plaintiffs' claims against Saint Francis without prejudice was entered on April 1, 2016.

## II.    THE 2017 ACTION

Relying on the one-year savings period under the Tennessee Savings Statute, Tenn. Code Ann. § 28-1-105,[3] Plaintiffs re-filed their complaint against Saint Francis on March 30, 2017.[4] On April 27, 2017, Saint Francis filed a Motion to Dismiss on the ground that Plaintiffs could not rely on the Savings Statue because Plaintiffs did not commence the 2010 action within the one-year statute of limitations. Further, Saint Francis argued that Plaintiffs did not qualify for § 121(c)'s 120-day extension to the statute of limitations because they failed to provide a HIPAA-compliant medical authorization with the 2010 pre-suit notice. In response, Plaintiffs disputed whether § 121(c) requires claimants to provide a HIPAA-compliant medical authorization. Plaintiffs argued that they were entitled to the extension because the 2010 pre-suit notice complied with all other requirements in § 121. Further, Plaintiffs asserted that § 121(a)(1)'s pre-suit notice requirement infringes on the fundamental right of access to the court and § 121(a)(2)(E)'s medical-authorization requirement violates the fundamental right of privacy in medical information. Finally, Plaintiffs maintained that HIPAA preempts § 121 because § 121 requires disclosure of medical information without a court order or patient consent. As in the first action, the State of Tennessee intervened to file a memorandum of law in defense of § 121's constitutionality.

The State contended that the law of the case and collateral estoppel doctrines precluded Plaintiffs from re-litigating their constitutional challenges, except that based on the right of privacy. The State argued that disclosure of health information in a health care liability action did not implicate a constitutional right to privacy. Plaintiffs did not file a response to the State's memorandum.[5] At the hearing on September 8, 2017,

---

[3] Tennessee Code Annotated § 28-1-105(a) provides, in relevant part:

> If the action is commenced within the time limited by a rule or statute of limitation, but the judgment or decree is rendered against the plaintiff upon any ground not concluding the plaintiff's right of action, . . . the plaintiff, or the plaintiff's representatives and privies, as the case may be, may, from time to time, commence a new action within one (1) year after the reversal or arrest.

[4] Because Mr. Webb died on March 15, 2011, Ms. Webb filed the present action in her individual capacity and on behalf of Mr. Webb's heirs-at-law.

[5] Saint Francis adopted the State's arguments on the constitutional issues.

Plaintiffs' counsel defended against the State's issue-preclusion arguments by asserting that the 2017 complaint initiated a new case and the constitutional challenges differed from those litigated in the 2010 action. On November 29, 2017, the trial court entered an order finding that Plaintiffs did not comply with § 121(a)(2)(E)'s medical-authorization requirement and, thus, Plaintiffs could not benefit from § 121(c)'s 120-day extension to the statute of limitations. The court found that Plaintiffs commenced the first action outside of the statute of limitations and could not rely on the Tennessee Savings Statute to re-file the complaint. The court also found this court's decision in *Webb I* was the "law of the case" with respect to Plaintiffs' preemption and constitutional arguments. Further, the court held that § 121 did not violate Plaintiffs' right to privacy. This appeal followed.

Plaintiffs raise five issues that we restate and consolidate as three: (1) whether HIPAA preempts § 121; (2) whether the trial court erred by finding that a claimant must comply with § 121(a)(2)(E)'s medical-authorization requirement to benefit from § 121(c)'s 120-day extension; and (3) whether § 121(a)(2)(E)'s medical-authorization requirement violates the equal protection and due process provisions of the Tennessee and United States Constitutions and the Open Courts Clause of the Tennessee Constitution.[6]

## STANDARD OF REVIEW

A Tennessee Rule of Civil Procedure 12.02(6) motion to dismiss challenges only the legal sufficiency of the complaint, not the strength of the plaintiff's proof or evidence. *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011). The resolution of a Rule 12.02(6) motion to dismiss is determined by an examination of the pleadings alone. *Id*. A defendant who files a motion to dismiss "admits the truth of all of the relevant and material allegations contained in the complaint, but . . . asserts that the allegations fail to establish a cause of action." *Id*. (quoting *Brown v. Tenn. Title Loans, Inc.*, 328 S.W.3d 850, 854 (Tenn. 2010)).

When considering a motion to dismiss, courts "must construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences." *Id*. (quoting *Tigg v. Pirelli Tire Corp.*, 232 S.W.3d 28, 31–32 (Tenn. 2007)). A trial court should grant a motion to dismiss "only when it appears that the plaintiff can prove no set of facts in support of the claim that would entitle the

---

[6] Plaintiffs' brief did not address the trial court's finding that *Webb I* precluded re-litigation of the constitutional challenges. That said, the State raised the issue in its brief and Plaintiffs addressed the issue in reply. Therefore, we find the issue is properly before the court.

plaintiff to relief." *Id*. (quoting *Crews v. Buckman Labs. Int'l, Inc*., 78 S.W.3d 852, 857 (Tenn. 2002)). "We review the trial court's legal conclusions regarding the adequacy of the complaint de novo." *Id*.

## ANALYSIS

### I.

Plaintiffs contend that HIPAA preempts § 121 because the medical-authorization requirement conflicts with HIPAA by forcing disclosure of medical information without a court order or patient consent.

As an initial matter, Plaintiffs concede that the Tennessee Supreme Court has found that HIPAA does not preempt § 121. *See Stevens ex rel. Stevens v. Hickman Cmty. Health Care Servs., Inc.*, 418 S.W.3d 547, 558 (Tenn. 2013). Even so, Plaintiffs argue that the issue should be reconsidered. "[I]ntermediate courts are not free to depart from the Tennessee Supreme Court's unequivocal holdings." *O'Dneal v. Baptist Mem'l Hosp.-Tipton*, 556 S.W.3d 759, 772 (Tenn. Ct. App. 2018), *appeal denied* (July 19, 2018). Therefore, we are bound by the holding in *Stevens* and decline to address the issue.

### II.

Plaintiffs contend that decisions by the Tennessee Supreme Court and the rules of statutory construction establish that a claimant is entitled to the 120-day extension under § 121(c) simply by providing pre-suit notice to potential defendants. Alternatively, Plaintiffs argue that compliance with the notice-content requirements in § 121(a)(2)(A) through (D) constitutes substantial compliance with § 121(a) "as a whole" and entitles the claimant to the extension under § 121(c). We respectfully disagree with both contentions.

Tennessee Code Annotated § 29-26-121(c) provides, in relevant part, as follows:

> When notice is given to a provider *as provided in this section*, the applicable statutes of limitations and repose shall be extended for a period of one hundred twenty (120) days from the date of expiration of the statute of limitations and statute of repose applicable to that provider.

(Emphasis added).

Section 121(a) comprises two subsections. Subsection (a)(1) provides the fundamental requirement that a claimant must communicate in writing about the claim to providers who will be named as defendants. *See Runions v. Jackson-Madison Cty. Gen. Hosp. Dist.*, 549 S.W.3d 77, 87 (Tenn. 2018). The requisite content of the notice is stated in § 121(a)(2), which states:

- 6 -

(2)　　The notice shall include:

(A) The full name and date of birth of the patient whose treatment is at issue;

(B) The name and address of the claimant authorizing the notice and the relationship to the patient, if the notice is not sent by the patient;

(C) The name and address of the attorney sending the notice, if applicable;

(D) A list of the name and address of all providers being sent a notice; and

(E) *A HIPAA compliant medical authorization permitting the provider receiving the notice to obtain complete medical records from each other provider being sent a notice.*

Tenn. Code Ann. § 29-26-121(a)(2) (emphasis added).

As this court recently explained in *Roberts v. Wellmont Health Sys.*, No. E2017-00845-COA-R9-CV, 2018 WL 3302178 (Tenn. Ct. App. July 5, 2018), "our Legislature requires a HIPAA-compliant medical authorization to accompany pre-suit notice." *Id.* at *4 (citing Tenn. Code Ann. § 29-26-121(a)(2)(E)). Further, "HIPAA deems authorizations defective if not filled out completely." *Id.* (citing 45 C.F.R. § 164.508(b)(2)). Thus, Tennessee courts have interpreted § 121(c) as requiring plaintiffs to comply with § 121(a)(2)(E) to qualify for the 120-day extension. *See Lawson v. Knoxville Dermatology Grp., P.C.*, 544 S.W.3d 704, 713 (Tenn. Ct. App. 2017) (finding claimants did not benefit from § 121(c) because they failed to comply with § 121(a)(2)(E)); *see also Woodruff by & through Cockrell v. Walker*, 542 S.W.3d 486, 500–01 (Tenn. Ct. App. 2017) (considering "the sufficiency of the medical authorizations provided with [a plaintiff's] pre-suit notice" to determine whether § 121(c) applied); *J.A.C. by & through Carter v. Methodist Healthcare Memphis Hosps.*, 542 S.W.3d 502, 512 (Tenn. Ct. App. 2016) ("To determine whether the trial court was correct in its determination that the Plaintiffs were not entitled to rely on the 120-day extension under [§ ]121(c), we must consider whether it correctly concluded that the Plaintiffs failed to comply with the requirements of [§ ]121(a)(2)(E)."); *Byrge v. Parkwest Med. Ctr.*, 442 S.W.3d 245, 251 (Tenn. Ct. App. 2014) (finding that claimant did not benefit from the 120-day extension when he failed to include a HIPAA-compliant medical authorization); *cf. Rajvongs v. Wright*, 432 S.W.3d 808, 814 (Tenn. 2013) (holding that the plaintiff was "entitled to the 120-day extension provided by [§ ]121(c)" because he "provided pre-suit notice as required by Tennessee Code Annotated § 29-26-121(a)").

- 7 -

Therefore, we respectfully reject Plaintiffs' argument that a claimant may benefit from § 121(c) without complying with the content provision of § 121(a)(2)(E).[7] For the same reason, we disagree with Plaintiffs' argument that compliance with the other requirements in § 121(a)(2) obviates the need to comply with § 121(a)(2)(E). A health care liability claimant must comply with § 121(a)(2)(E) to qualify for the extension under § 121(c); *ipso facto*, a plaintiff cannot qualify for the extension under § 121(c) without complying with § 121(a)(2)(E).[8]

We also find unavailing Plaintiffs' argument that the trial court's holding has the effect of a dismissal with prejudice and, thus, is contrary to the Tennessee Supreme Court's directive in *Foster v. Chiles*, 467 S.W.3d 911 (Tenn. 2015). In *Foster*, the Court found the proper sanction for failing to comply with § 121(a)(1) is dismissal without prejudice. *Id*. at 916; *see also Stevens*, 418 S.W.3d at 560 (holding that noncompliance with § 121(a)(2)(E) requires dismissal without prejudice). We rejected a similar argument in *Byrge v. Parkwest Medical Center*, 442 S.W.3d at 252.

In *Byrge*, the plaintiff failed to include a HIPAA-compliant medical authorization with his pre-suit notice and then filed a complaint outside of the one-year statute of limitations. *Id*. at 246. The plaintiff voluntarily nonsuited his complaint and re-filed the action nine months later. *Id*. at 247. The trial court dismissed the second complaint on the ground that the original lawsuit was not timely filed and, therefore, the plaintiff could not rely on the Savings Statute. *Id*. On appeal, the plaintiff relied on the Tennessee Supreme Court's decision in *Myers v. AMISUB (SFH), Inc.*, 382 S.W.3d 300 (Tenn. 2012), where the Court stated that § 121 does not "provide for the consequence of dismissal with prejudice." *Byrge*, 442 S.W.3d at 252 (quoting *Myers*, 382 S.W.3d at 312). We found that argument misplaced:

> Plaintiff has missed the point. We are not dismissing Plaintiff's second suit for non-compliance with Tenn. Code Ann. § 29-26-121, and neither did the

---

[7] A claimant need not strictly comply with § 121(a)(2)(E), *Stevens*, 418 S.W.3d at 555, and compliance may be excused upon a showing of extraordinary cause, Tenn. Code Ann. § 29-26-121(b) ("The court has discretion to excuse compliance with this section only for extraordinary cause shown."). Plaintiffs do not argue that they substantially complied with § 121(a)(2)(E) or that their noncompliance should be excused for extraordinary cause.

[8] An exception to the general requirement of a HIPAA-compliant medical authorization exists when the provider being given pre-suit notice is the "sole healthcare provider who would 'be named defendant.'" *Bray v. Khuri*, 523 S.W.3d 619, 623 (Tenn. 2017). Nonetheless, Saint Francis was not the "sole provider" to whom Plaintiffs gave pre-suit notice.

Trial Court. Rather, we are holding that Plaintiff's non-compliance with Tenn. Code Ann. § 29-26-121 in his first suit prevented Plaintiff from obtaining the extra 120 day extension of the statute of limitations.

As Plaintiff was not entitled to the extra 120 day extension of the statute of limitations, and it is uncontroverted that Plaintiff did not file his First Complaint within the one year general statute of limitations for healthcare liability actions, Plaintiff's First Complaint was not filed within the statute of limitations. As Plaintiff's First Complaint was not timely filed, Plaintiff may not rely upon Tenn. Code Ann. § 28-1-105 to save his cause of action.

*Id.*; *see also Dortch v. Methodist Healthcare Memphis Hosps.*, No. W2017-01121-COA-R3-CV, 2018 WL 706767, at *3–4 (Tenn. Ct. App. Feb. 5, 2018) (affirming trial court's dismissal when the plaintiff included a non-compliant medical authorization with her pre-suit notice, filed a complaint outside of the statute of limitations, voluntarily dismissed the complaint, and then attempted to re-file the complaint in reliance on the Savings Statute), *appeal denied* (June 7, 2018).

Like the plaintiff in *Byrge*, Plaintiffs' noncompliance with § 121(a)(2)(E) in the 2010 action prevented them from obtaining the 120-day extension to the statute of limitations. It is undisputed that Plaintiffs did not file the first complaint within the one-year statute of limitations. Consequently, we are not dismissing Plaintiffs' second complaint for noncompliance with § 121(a)(2)(E); rather, we are holding that Plaintiffs' noncompliance prevented them from obtaining the 120-day extension and, thus, Plaintiffs did not qualify for the one-year savings period under Tennessee Code Annotated § 28-1-105. *See id.* § 105(a) (providing that the plaintiff may commence a new action within one year when the original action was "commenced within the time limited by a . . . statute of limitation").

Therefore, we affirm the trial court's determination that Plaintiffs' failure to comply with Tennessee Code Annotated § 29-26-121(a)(2)(E) disqualified them from benefiting from the 120-day extension to the statute of limitations under § 121(c).

### III.

Plaintiffs contend the § 121(a)(2)(E)'s medical-authorization requirement violates Mr. Webb's constitutional rights to equal protection, procedural due process, access to the courts, and privacy in his medical records.

In both *Webb I* and *J.A.C.*, we held that § 121 does not violate a claimant's rights to equal protection, due process, and access to the courts. *See Webb I*, 2013 WL 1645713, at *16, 19, 21; *J.A.C.*, 542 S.W.3d at 521–22. We find no reason to reconsider our reasoning in either case.

As for Plaintiffs' right-of-privacy challenge, we find that the pursuit of a health care liability action constitutes a voluntary waiver of any such right and, thus, there can be no violation of the right to privacy. In *Whalen v. Roe*, the United States Supreme Court explained that the constitutionally protected "zone of privacy" comprises "at least two different kinds of interests[:] . . . the individual interest in avoiding disclosure of personal matters, and . . . the interest in independence in making certain kinds of important decisions." 429 U.S. 589, 598–601 (1977) (footnotes omitted). The Court was considering whether the New York State Controlled Substances Act of 1972 violated these interests by recording the names and addresses of all persons who obtained prescriptions for certain drugs. *Id*. at 591. The Court recognized that "the statute threaten[ed] to impair . . . [the patients'] interest in the nondisclosure of private information," but held that the statute did not "pose a sufficiently grievous threat to either interest to establish a constitutional violation." *Id*. at 600. Even so, in *Nat'l Aeronautics & Space Admin. v. Nelson*, the Court noted that "[s]tate and federal courts have offered a number of different interpretations of *Whalen*." 562 U.S. 134, 146 n.9 (2011). While some courts have held "that disclosure of at least some kinds of personal information should be subject to a test that balances the government's interests against the individual's interest in avoiding disclosure," others have "held that the right to informational privacy protects only intrusions upon interests 'that can be deemed fundamental or implicit in the concept of ordered liberty.'" *Id*. (quoting *J.P. v. DeSanti,* 653 F.2d 1080, 1090 (6th Cir. 1981)). The Court assumed that the privacy interest was of "constitutional significance" but held that "whatever the scope of th[e] interest," it did not prevent the challenged action. *Id*. at 147.

In *McNiel v. Cooper*, this court cited *Whalen* and its progeny for the proposition that "[p]atients have a constitutionally protected interest in avoiding the disclosure of private, personal information and their medical records fall within the sphere of constitutionally protected private information." 241 S.W.3d 886, 895 (Tenn. Ct. App. 2007) (citations omitted). The court was considering the State's right "to gain access to a patient's medical records in the context of an investigation of alleged wrong-doing by the patient's physician." *Id*. at 894. We balanced "the patient's privacy interests . . . with the public's interest in investigating the conduct of licensed physicians." *Id*. at 896 (citations omitted). We concluded that the statutory procedures for obtaining and using patient records, "when followed, protect the patient's reasonable expectation that his or her medical records will not be released improperly" because "[t]hey ensure that the [agency] will receive only those records that are necessarily related to the complaint and that these records will remain confidential until they are introduced at a disciplinary proceeding

against the physician." *Id*. at 898. Accordingly, we held that compliance with a request for patient records violated none of the patient's privacy interests. *Id*.[9]

The statute *sub judice* differs in a significant way from those in *Whalen* and *McNiel*: the disclosure of medical records under § 121(a)(2)(E) is based on the patient's choice to sue the providers to whom the records will be given. *See Stevens*, 418 S.W.3d at 557 ("[A] plaintiff's decision whether to file suit is still a voluntary one."). In both *Whalen* and *McNiel*, the courts were considering statutes that permitted state agencies to obtain medical information *without* the patients' consent.

In *Webb I*, we found that § 121 did not violate a patient's statutory right of privacy under HIPAA because the patient was consenting to the disclosure of medical records by pursuing a health care liability claim. 2013 WL 1645713, at *14. In *Stevens*, the Tennessee Supreme Court found that § 121(a)(2)(E) did not violate a claimant's right to privacy under Tennessee's implied covenant of patient-physician confidentiality for the same reason. 418 S.W.3d at 558. The fact that Plaintiffs challenge the required disclosure under the Tennessee and United States Constitutions does not change our conclusion. Like contractual or statutory rights, constitutional rights may be waived. *Poole v. Union Planters Bank, N.A.*, 337 S.W.3d 771, 778 (Tenn. Ct. App. 2010) (citing *State, Dep't of Highways v. Urban Estates, Inc.,* 465 S.W.2d 357, 360–61 (Tenn. 1971)). While Tennessee courts have not directly addressed the waiver of the right to privacy, courts in other states have found that, like other constitutional rights, the right to privacy may be waived. *See Shane v. Par. of Jefferson*, 209 So. 3d 726, 741 (La. 2015) ("[T]he right to privacy, like other personal rights, may be lost in many ways, by express or implied waiver, consent, or by a course of conduct that prevents its assertion."); *Maryland State Bd. of Physicians v. Eist*, 932 A.2d 783, 803 n.15 (Md. Ct. Spec. App. 2007) ("A person may waive his federal constitutional right to medical privacy."). More specifically, other courts have found a plaintiff waives his or her constitutional right to privacy in medical records when the plaintiff puts at issue his or her medical condition. *See Willoya v. State, Dep't of Corr.*, 53 P.3d 1115, 1124 (Alaska 2002) (holding that the plaintiff "waived any claim that his [constitutional] rights were violated" by "put[ting] his medical condition at issue"); *Montin v. Gibson*, No. 4:09-CV-3102, 2009 WL 2486441, at *2 (D. Neb. Aug. 12, 2009) ("[A] plaintiff can waive his [constitutional] right to privacy in his medical information if he puts his medical condition at issue [in] a lawsuit."); *Ferrell v. Glen-Gery Brick*, 678 F. Supp. 111, 112–13 (E.D. Pa. 1987) (finding that plaintiff waived

---

[9] Before *McNiel*, the Tennessee Supreme Court declined to find a constitutional right of informational privacy under the Tennessee Constitution "[a]bsent a fundamental right or other compelling reason." *Doe v. Sundquist*, 2 S.W.3d 919, 921, 926 (Tenn. 1999).

her constitutional right to privacy in her mental health records by placing her mental health at issue). Logically, when a plaintiff waives the right to privacy, there can be no violation of that right. *See Willoya*, 53 P.3d at 1125 n.39 ("Since [the plaintiff] had no privacy interest in the release of his medical records, . . . there could be no violation of his right to privacy.").

Moreover, "the legislature has the inherent authority to set the parameters under which a cause of action accrues and is abolished[.]" *J.A.C.*, 542 S.W.3d at 521 (quoting *Webb I*, 2013 WL 1645713, at *15–16); *see Mills v. Wong*, 155 S.W.3d 916, 923 (Tenn. 2005) ("The Tennessee General Assembly itself has the power to weigh and to balance competing public and private interests in order to place reasonable limitations on rights of action in tort which it also has the power to create or to abolish."). By requiring plaintiffs to consent to disclose their medical records, the legislature "merely impose[d] a step to be taken before the commencement of an action." *J.A.C.*, 542 S.W.3d at 519. Because pursuing a health care liability action constitutes a voluntary waiver, there can be no violation of the right to privacy.

Based on the foregoing, we affirm the trial court's judgment that Tennessee Code Annotated § 29-26-121 does not violate Plaintiffs' constitutional right to privacy.

## IN CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against Evangeline Webb.

_____
FRANK G. CLEMENT JR., P.J., M.S.